## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-60001

ERICA LAVINA and ANDREA DARLOW,

individually and on behalf of all those
similarly situated,

                    Class Plaintiffs.                        CLASS REPRESENTATION

v.

THE FLORIDA PREPAID COLLEGE BOARD, a
Florida agency; JOHN D. ROOD, in his capacity as
Chairman of the Florida Prepaid College Board; ADRIA
D. STARKEY, in her capacity as Vice Chair of the
Florida Prepaid College Board; MARK AGUSTIN, in
his capacity as a member of the Florida Prepaid College
Board; SLATER BAYLISS, in his capacity as a member
of the Florida Prepaid College Board; KATHRYN
HEBDA, in her capacity as a member of the Florida
Prepaid College Board; RADFORD LOVETT, in his
capacity as a member of the Florida Prepaid College
Board; TROY MILLER, in his capacity as a member of
the Florida Prepaid College Board; and KEVIN
THOMPSON, in his capacity as Executive Director of
the Florida Prepaid College Board,

                    Defendants.

_____/

## **CLASS ACTION COMPLAINT**

Plaintiffs, Erica Lavina and Andrea Darlow individually, and on behalf of all those

similarly situated, by and through their undersigned counsel, hereby bring this lawsuit against THE

FLORIDA PREPAID COLLEGE BOARD ("Prepaid" or the "Board"), JOHN D. ROOD, ADRIA

D. STARKEY, MARK AGUSTIN, SLATER BAYLISS, KATHRYN HEBDA, RADFORD

LOVETT, TROY MILLER (collectively the "Board Members") and KEVIN THOMPSON (the "Board ED") and as grounds therefore allege as follows:

1. This is a class action brought on behalf of two classes that mainly consist of hard-working parents and grandparents that planned for years to send their loved ones to college by buying a Florida Prepaid College Plan during and during or prior to the 2006-2007 enrollment period. One of the most popular plans that was sold is called the "tuition plan" (the "Plan"), which was to cover the costs of an undergraduate degree. Many of these parents and grandparents purchased these plans as a hedge against increased tuition costs and based on the promise that the total cost of enrollment at a college or university within the Florida State System ("a Florida State School") would be fully paid or that the value of the cost to send their beneficiaries a "Florida State School" would be transferred to a Non-Florida State School ("Non-Florida State School").

2. Unbeknownst to these persons, the value of their Plan was significantly decreased by the State of Florida through a law enacted in 2007 by the Florida Legislature and adopted and enforced by Prepaid, its Board Members, and the Board ED. This law created a "Tuition Differential Fee" ("TDF") which by definition was just a supplemental "tuition" charge[1].

3. The proposed TDF was openly discussed by Prepaid in lobbying the Florida Legislature in 2007. Prepaid's founder, Stanley Tate, called the definitional distinction proposed by the legislature "a joke" "a subterfuge" and a "façade." Prepaid's then chairman, Ted Hopner, also told the Legislature that Prepaid took the issue of whether Prepaid was responsible to pay the TDF: "to our attorney, Counselor Phil Blank…and he opined in a written legal opinion to our

---

[1] Originally, the TDF only could be charged by the University of Florida, Florida State University, the University of Central Florida, University of South Florida, and Florida International University. In 2009, the Legislature passed to a bill to permit every Florida State university and college to charge a TDF. *See* Ch. 2009-98, Laws of Florida.

board that, in fact, [the TDF] appeared to be tuition under the statute.  He was concerned that if it were passed…that we would, in fact, probably end up in court.  We would lose in court and we would end up having to pay the fee as a board." *See* Para. 35-38, *infra.*

4.      After this type of lobbying, the Legislature ultimately gave the TDF a distinct definition different than "tuition" and also provided that persons who had a Prepaid College Plan as of the 2007 legislation would be exempt from paying the TDF.  The Legislature's and Prepaid's purpose in making these definitional decisions as well as creating the exemption was done so Prepaid would not be responsible for payment of the TDF.  Since passage of this law, Prepaid has made the decision to use the definitional distinction and the exemption as justification for not properly paying about 13,000 families per year who used a Prepaid Plan for their child that attended Non-Florida State Schools.  For a full four-year education this underpayment is about $5,300 per hard working Florida family.

5.      To solidify its decision to shortchange certain families, in 2007, after the law was passed, Prepaid, then through an administrative process and through its own actions, changed and/or improperly interpreted the terms of prepaid contracts to take away substantive rights in those Plans purchased during or prior to the 2006-2007 enrollment period. It accomplished that task by changing the terms of the then existing contract to ensure that the TDF would not be part of payments to any beneficiary that attended a Non-Florida State School.  Then, it changed contract language for a further legal justification for not paying Non-Florida State School beneficiaries. What is so troubling by this language change is Prepaid admitted in 2007, when it lobbied for its own exemption, recognized that the definitional creation of a TDF was a joke, a façade, and a subterfuge.  This type of abuse of process and double take is simply unacceptable.

6.     To make matters worse, in 2020, the Board issued refund payments to persons who purchased their Plans during and after the 2007-2008 enrollment period.  This has led to an even greater disparity in the value of the Plans purchased during or prior to the 2006-2007 enrollment period.  For one class member this will result in a total payment of $18,587.20 to her daughter's Non-Florida State School, while the Plan she bought for her son, in 2009 had a net cost of $13,952.95 and will pay out $23,994.40.  Simply put, because of Prepaid's actions, a Plan bought after the 2006-2007 enrollment period costs $2,356.75 less and will pay out $5,407.20 more.  *See* Para. 56, *infra*.

7.     What makes this case so much more compelling is Prepaid, in its 2022 Annual Report asserts it has in excess of $4 Billion Dollars in surplus.  Simply put, Prepaid, a governmental agency, and the people that run the agency, made the conscious decision to severely underpay tens of thousands of Florida families about $5,300 each and chose instead to continue to hold onto its enormous surplus.

## PARTIES, JURISDICTION AND VENUE

8.     The jurisdiction of this Court is invoked pursuant to Article III Section 2 of the United States Constitution and Title 28 Section 1331 of the United States Code.  Specifically, this action arises under the Contract, Taking and Due Process Clauses of the United States Constitution, and Plaintiffs' right to relief depends on resolution of substantial questions of federal law under Title 42 Section 1983, United States Code.

9.     Jurisdiction is also appropriate under Title 28 Section 2201, United States Code, because this action seeks declaratory and injunctive relief related to these claims as well as monetary damages flowing from the relief requested.

10.     Venue is proper in the Southern District of Florida, in that a substantial part of the events or omissions giving rise to the claim occurred in this district, (28 U.S.C. § 1391(b)(2)), and the property that is the subject of this action is located in this District (28 U.S.C. § 1391(b)(2)).

11.     Plaintiff Andrea Darlow is a Florida citizen and resides in Broward County Florida.

12.     Plaintiff Erica Lavina is also a citizen of the State of Florida.  Ms. Lavina's daughter plans to attend Ursinus College in the Fall of 2024.

13.     Defendant Prepaid is the agency head and administers the Stanley G. Tate Florida Prepaid College Program (also known as the Florida Prepaid College Plan) and the Florida College Savings Program (also known as the Florida 529 Savings Plan), pursuant to the provisions of Part IV, Chapter 1009, Florida Statutes. The Board exercises the powers granted to it pursuant to Sections 1009.971(1) and (3) – (6), Florida Statutes. One of the powers and duties statutorily conferred on Prepaid is to independently "sue and be sued."  The Board is also given authority to pay all benefits under a Plan.  *Fla. Stat.* § 1009.971 (4)(c).

14.     Defendant Board Members are all current members of the Prepaid Board. Each is a Florida citizen, and each is being sued in the member's official capacity as a member of the Prepaid Board.

15.     Defendant Board ED is the executive director for the Florida Prepaid Board.  The Board ED has the responsibility to: 1) initiate all rulemaking and adopt internal procedures and guidelines; 2) perform such other functions as may be necessary to supervise, direct, conduct and administer the day-to-day duties of the Florida Prepaid College Board as authorized by law or by rules and policies adopted by the Board; and 3) control and disburse funds to carry out the constitutional and statutory duties of the Board.  The Board ED is a Florida citizen and is being sued in his capacity as Prepaid's Executive Director.

## BACKGROUND

16.     The Plan was originally developed in 1988 as a way to help families save for college.  Its message prior to 2007 was simple: "college costs in Florida are expected to quadruple by the time today's newborn goes to college. It is hard to predict how much it will cost to send your children to college. But with the Florida Prepaid College Program you don't have to worry…The program guarantees to cover the cost when your children are ready for college." *See* College Bound Enrollment Issue 2001-02, a true and correct copy of which is attached hereto as **Exhibit A**.

17.     The Plan also touted flexibility stating, "[t]he value of the plan—at the time of college enrollment—can also be transferred to most private colleges…and most out-of-state colleges." *Id.*

18.     With respect to each type of Plan offered, the intent was identical: "[w]hen your child is ready for college, the Prepaid tuition, local fee and dormitory plans cover the **actual cost** at any Florida public university or community college, **or the value of the plans may be transferred to** most private colleges in Florida and most out-of-state colleges." College Bound, August 2006 (emphasis added) a true and correct copy of which is attached hereto as **Exhibit B**. The intent of the Plan was clear:  lock in the future costs of sending your child to college today. And, if you child does not go to a Florida State School the future cost increases to attend a Florida State School will be transferred to a Non-Florida State School.

### The Current Cost to Attend a Florida State School

19.     The actual posted cost to enroll for 30 undergraduate credit hours at the University of Florida in 2021-22 was $6,381.30—this amount includes all fees.   But, Prepaid pays only $4,623.00 to a Plan Beneficiary under a Tuition and a Local Fee Plan to attend a Non-Florida State

School.  Much of the difference between the two amounts—$1,325.10 per 30 credit hours—is related to Prepaid's refusal to transfer and apply the Tuition Differential Fee ("TDF") to payments to Non-Florida State Schools Plan Beneficiaries attend---this amounts to $5,300.40 for 120 credit hours.

20.     The TDF was enacted by the Florida Legislature in 2007, and was defined by the Legislature as a "supplemental fee,"[2] instead of "tuition."[3] *See* Ch. 2007-225, Laws of Florida.

### The Prepaid Contract ("Plan Contract") and Prepaid's Interpretation

21.     The Contract entered into by Plaintiffs and members of the classes ("Plan Contract") addresses transfer and payment to a Non-Florida State School in Sec. 5.06:

> The contract may be applied to a regionally-accredited, not for profit, degree granting, out-of-state community college, college or university.  The Board will transfer an amount not to exceed the ***current rates*** at state universities and community colleges in Florida.  The purchaser must provide written authorization to the Board to allow the transfer of benefits to a qualified out-of-state college or university.

(emphasis added). A true and correct copy of this pre-2007-2008 Plan Contract is attached as **Exhibit C**.

22.     The Plan Contract defines "Registration Fee" in Sec. 1.07, as "the fee charged for tuition and includes the matriculation fee, financial aid fee, building fee, and Capital Improvement Trust Fund fee."

---

[2] Tuition differential is defined in the 2007 Legislation as: "the *supplemental fee* charged to a student for instruction provided by a public university in this state." (emphasis added). *See* §§ 1009.01(3), 1009.24(16), Fla. Stat.

[3] Tuition is defined in the 2007 Legislation as: "the *basic fee* charged to a student for instruction provided by a public postsecondary educational institution in this state." (emphasis added). *See* § 1009.01(1), Fla. Stat.

23.     Prepaid has taken the position that the Legislature determines, or otherwise restricts, the amount of the registration fees that may be charged by a state university for each academic year.

24.     Based on this position, Prepaid, based on decisions by the Board and the Board ED, refuses to transfer the TDF to beneficiaries who attend Non-Florida State Schools, claiming the current statutory definition for TDF is not included as an element of the "registration fee."

25.     Prepaid has stated publicly that it would pay the TDF to a Non-Florida State School if the Legislature had, rather than calling it a "supplemental fee," defined the TDF as "tuition", "matriculation fee," "financial aid fee" or any of the other fees defined in the statute as "registration fees" (as defined in Sec. 1.07 of the Plan Contract). *See* December 15, 2006 letter from Phil Blank to Thomas Wallace, a true and correct copy which is attached hereto as **Exhibit D.**

### 2007 Legislation Creating the TDF

26.     In late 2006, the Florida Board of Governors State University System approved a pilot program to charge $1,000.00 per year to each student as an "Academic Enhancement Fee." The fee was designed to improve the quality of overall education.  *See* Meeting Minutes from November 16, 2006, Board of Governors State University System of Florida, a true and correct copy of which is attached hereto as **Exhibit E**.  During the next legislative session Senate Bill 1710 and House Bill 905 were filed to address this new fee.  Both bills, as originally filed, were nearly identical and neither exempted Prepaid or Prepaid Beneficiaries ("Beneficiary") from payment.

27.     These bills created a well-publicized dilemma for Prepaid as addressed by the Florida House: "[b]ecause the University of Florida has indicated that fee revenues will be used, in part, to hire additional faculty to provide instruction, the fee could be considered a form of

"tuition" even though it is called a "fee." If the new "fee is determined to be a part of tuition, [Prepaid] could be required to pay the amount on behalf of its contract holders." *See* House of Representative's Staff Analysis for HB 905, April 6, 2007, a true and correct copy is attached hereto as **Exhibit F.** The House staff analysis also addressed the use of the term "fee," when the charge was clearly tuition as follows: "[u]se of the term 'fee' to describe the proposed charge appears to be inconsistent with the current statutory definition of tuition." *Id.*

**Prepaid's Internal Position Regarding the TDF During the 2007 Legislative Session**

28.     In late 2006, Prepaid's Board began to address confusion and frustration amongst Prepaid customers about the fee, including that the "fee is nothing more than a tuition increase and their Prepaid plan should cover the new fee." Prepaid Meeting Minutes December 7, 2006, at p. 3, a true and correct copy is attached hereto as **Exhibit G**.

29.     After a robust discussion, the Board recognized that this new fee,[4] which is intended to provide a quality education, is most likely covered under the Plan because "in the past these types of costs have been covered by tuition." *Id.* at 3.   The Board also decided that because the new fee will have an impact on Prepaid, it must fight to exempt current Plan Beneficiaries from paying the fee. The Board also recognized that it should also sell a new TDF Plan to future contract holders. *Id.*[5]

---

[4] Included in this discussion was the recognition that the Board had contingency plans to "allow the state university system to begin to break out of the framework of chronic under-funding and the dilemma of universities are not adequately performing against their benchmarks nationally." *See* Exh. G at 2.

[5] The Board also cautioned that "future marketing materials may need to be revised to clearly highlight the fees covered under (sic) each plan and should be cautious on the use of the word, "guarantee." *See* Exh. G at 5.   This is an admission that the then existing text did not unambiguously exclude either fee.

30.     At the meeting, the Board was also provided an Opinion Letter from Phil Blank, Prepaid's General Counsel, that provided as follows:

> [I]n the event the BOG proposal is determined to be part of the registration fees, either "tuition" or another registration fee, and not an "additional fee," the Board would be required to cover such expenses for existing contract holders.  The Tuition Plans offered by the Board pay the costs of registration, which include the cost of tuition and specific fees…. A matriculation fee is listed in the Master Covenant as one of the registration fees that is paid for contract holders, but not in the applicable statutes.  By definition a matriculation fee is an enrollment fee; depending on how the proposed fee is defined or applied, the Board would be required to pay the proposed fee for existing contract holders.

*See* Exhibit D.

31.     In the same document, Mr. Blank also foresaw litigation:

> Existing purchasers and/or beneficiaries may bring an action seeking various forms of relief, including a declaratory judgment against the Board to secure the payment of the proposed fee as a contract benefit.  If the proposed fee is determined to be part of tuition or the cost of registration, a declaratory judgment would hold that the existing contracts between purchasers and/or beneficiaries and the Board require the Board to cover the additional cost resulting from the legislative action.

*Id*.  As will be discussed, *infra,* Mr. Blank confided to then Chairman Hoepner that Prepaid would lose that declaratory judgment battle.

**Prepaid's Public Position Regarding the TDF in 2007 and How the TDF would be Interpreted Under its Current Standardized Plan Contract**

32.     After the Board meeting, Prepaid issued a press release where Chairman Hoepner is quoted: "[Prepaid has] a responsibility to the families that have saved their hard-earned money by purchasing a Prepaid College Plan to uphold the guarantee that their plan will cover the cost of tuition when their children are ready to attend college."  A true and correct copy of Prepaid's December 13, 2006 Press Release is attached hereto as **Exhibit H.**  The release continued that, "The Prepaid College Board members agreed that Florida families who had purchased Prepaid College tuition plans understood that plan would pay the actual costs of tuition when their children

attend college.  Prepaid Board members expressed concern that, although the Board of Governors proposal was identified as a 'fee,' some might consider it to be 'tuition' because in the past these types of costs have been covered by tuition, not by a special fee." *Id*.

33.     The release also recognized that the new fee would "represent a 41 percent increase in tuition rates, in a single year." *See* December 13, 2006 Letter from Hoepner to Rudy Garcia ("the fact that the fee will pay for additional faculty and academic advisors, which are costs that are generally covered by tuition…such fees may be considered tuition with another name"), a true and correct copy is attached hereto as **Exhibit I**.

34.     Again, Prepaid expressed its concerns that payment for the TDF into the future will deplete its financial reserves and, in order to protect its reserves, Prepaid will fight to amend the bill to exempt current Beneficiaries. To this end, Mr. Hoepner and the founder of the Prepaid Plan, Stanley Tate, were extremely vocal during legislative committee hearings addressing the new fee.

35.     The Florida House held a hearing in the House Post-Secondary Education Committee Workshop on March 20, 2007, where both Mr. Tate and Mr. Hoepner spoke (a true and correct copy of the Transcript of the Hearing is attached as **Exhibit J**):

Stanley Tate:

- I felt that the word "fee" was a subterfuge for the word "tuition."
- For this bill to pass now and use the word "fee" instead of "tuition" is a joke.  It's a façade.  This is really tuition.
- You're doing something wrong to the thousands of families that really believe that when they purchased that contract and paid for it over 18 years, that they were paying for tuition.
- Don't do it.  Don't change the tuition.  Don't call it another name by saying it's a fee. I don't even know whether it is legal or not.  But I could tell you I know it's wrong, morally, educationally and in every other way.  If you read the program and what the people bought, they bought a prepaid tuition contract. Don't change it now.

Ted Hoepner:

- And when we thought about it and we discussed it, it was problematical to us because we said, this is really tuition.  We said that when you write a bill that talks about academic enhancement and you say it's going to be for faculty and for teaching purposes and then you look at the Florida statutes, that is tuition.
- So here we've got a situation where it sounds as if we're exculpated but, in fact, were exculpated from the very thing that we guarantee as a state; and that is, a paid tuition.
- So we took it to our attorney, Counselor Phil Blank…and he opined in a written legal opinion to our board that, in fact, it appeared to be tuition under the statute.  He was concerned that if it were passed…that we would, in fact, probably end up in court.  We would lose in court and we would end up having to pay the fee as a board.

36.     Mr. Hoepner also testified at the House Postsecondary Education Committee Meeting 3/27/07[6] as follows (a true and correct copy of the Transcript for the Hearing is attached as **Exhibit K**):

Ted Hoepner:

- The strike-all amendment does, in fact, answer all of our concerns.  We thank you for looking to the College Prepaid Board and its group of advisors for the new language that was included…we think that this keeps the promise with all of the Florida Prepaid students and contract holders..."

37.     Mr. Tate and Mr. Hoepner also testified at the Senate Higher Education Committee Meeting 3/21/07 (a true and correct copy of the Transcript for the Hearing is attached as **Exhibit L**):

Stanley Tate:

- My concern for this bill is, frankly, is this another word for tuition.  Enhancement is a word.  It's a fee. It means that you're increasing the cost of tuition.

Ted Hoepner:

- We also note that there is no specific exclusion for our contract holders.  There is an exclusion for the fund itself to be exempt.  However, it's our counsel's view that if there is litigation, which we believe there will be…this will be found to be tuition.  If it's found to be tuition by the documents, our contracts with our contract holders, we will be held liable to pay.

---

[6] This meeting adopted a strike all amendment that included the exemption for Prepaid Beneficiaries.

- Let me cut to the chase.  The Florida College Board believes it's obligated to deal with this enhancement fee either through an exemption or paying it.  We cannot break the deal with the contract holders.  You know, you and we—we believe have an obligation to those existing contract holders.  We guaranteed them their tuition.  We can't break that.
- We believe the solution is simple.  It's to exempt both the board and the contract holders…
- And if you look at the tuition, which this really is, it represents about a 50 percent increase in what you're charging youngsters for tuition.

### Final Law Enacting the TDF

38.     As passed, SB 1720 contained the exemption sought by Prepaid providing that both Prepaid and any Prepaid Plan beneficiary who purchased a Plan before 2007 is exempt from paying the TDF.  *See Fla. Stat.* § 1009.98 (10(b)(5).

39.     The legislation also created a new definition for TDF: "supplemental fee charged to students for instruction."  The final law did not alter the definition for "tuition" which remained "the basic fee charged to students for instruction."  The bill also permitted Prepaid to begin offering a new TDF Plan and limited the sales of the Plan to future contract purchasers only.  Accordingly, not one person in the Classes (defined below) was permitted to buy the new TDF Plan.  *See* College Bound Back to School 2008 a true and correct copy of which is attached hereto as **Exhibit M**.

40.     Finally, the new law only permitted certain Florida State Schools to charge the fee.  This was amended in 2009 and now the TDF applies to all Florida State Schools.

41.     Prepaid touted that with the passage of the exemption, "The Promise is kept to Families with Plans."  *See* College Bound from Summer 2007, a true and correct copy of which is attached hereto as **Exhibit N.**  In other words, the "Prepaid College Plan guarantee [was honored by exempting] current Prepaid College Plan customers from paying the tuition differential fee." *Id.*

**PREPAID'S ADMINISTRATIVE RESPONSE TO PASSAGE OF 2007 ACT UNILATERALLY CHANGED THE PLAN CONTRACT AND VIOLATED THE CONTRACT CLAUSE CONSTITUTING A TAKING**

42.     After the 2007 Act was passed Prepaid chose to address Mr. Hoepner's comment that: "[t]he Florida College Board believes it's obligated to deal with this enhancement fee either through an exemption or paying it.  We cannot break the deal with the contract holders.  You know, you and we—we believe have an obligation to those existing contract holders.  We guaranteed them their tuition.  We can't break that." *See* Ex. L.

43.     Rather than pay the amount of the TDF to persons who used the Plan to pay for a Non-Florida State School, Prepaid utilized its rulemaking authority to substantively change the Plan Contract to specifically provide that "tuition" did not include the TDF.

44.     In subsequent litigation regarding the appropriateness of Prepaid's actions and contract interpretation, Prepaid has argued that it has the right to change the substantive terms of its contracts via the use of the Florida Administrative Code, including changing term definitions that destroy Plan Members substantive rights. In that litigation, *Snyder v. Florida Prepaid College Board*, 269 So. 3d 586 (Fla. 1st DCA 2019), the court agreed that Prepaid was permitted to change the substantive terms of its contract. Prepaid also argued to the *Snyder* court, that notwithstanding Prepaid's stance in 2007 calling the TDF a fee instead of tuition was a joke, a façade, and a subterfuge, an interpretation that the  TDF is "tuition" under the Plan contact was "absurd." Accordingly, any breach of contract action is foreclosed.

45.     Plaintiffs submit that the Legislature's actions in 2007 and 2009 with respect to defining the TDF as something other than "tuition" and creation of Prepaid's exemption from payment of the TDF is a violation of the Contract and/or Taking Clauses in the United States Constitution. Plaintiffs also submit that Prepaid's interpretation of the 2007 and 2009 law,

subsequent amendment of the Plan Contact through administrative procedure, and arguments made in state court are a violation of the "takings" clause of the United States Constitution.

46.     Simply put, contrary to the promise made by Mr. Hoepner, the Legislature's as well as Prepaid's response to the proposed and actual legislation had the effect of "breaking the deal with contract holders" who used the Plan for a Non-Florida State School.  This is not permissible under the United States Constitution and should not be condoned.

**Effect of the 2007 and 2009 Legislation and Prepaid's
Interpretation on the Plan Purchasers
whose Beneficiaries use the Plan to Attend a Non-Florida State School**

47.     In 2004, Andrea Darlow purchased a Plan for her daughter.  In 2021, her daughter started to attend, Elon University, a Non-Florida State School. In 2021, the Plan paid Elon University $2,619.70 for 17 credit hours instead of $3,616.07 the equivalent cost for attending a State School ($212.71/credit hour).

48.     In 2006, Erica Lavina purchased a Tuition and Local Fee Plan for her daughter who intends to attend Ursinus University—a Non-Florida State School—starting in the Fall of 2024. Ms. Lavina has been told by Prepaid that her Tuition Plan will only make an approximate payment to Ursinus totaling $155.00 per credit hour as opposed to the anticipated $212.71 per credit hour it currently costs to enroll at a Florida State School.

49.     Most of the difference from the cost to attend a Florida State School—$212.71— and what is paid to a Non-Florida State School is the TDF which currently stands at $44.17 per credit hour at the University of Florida for a total of $1,325.10 per 30 credit hours.

50.     What is so troubling about Prepaid's interpretation is that its own founder, Chairman, General Counsel and even the Staff in the Florida House all recognized that the TDF was the functional equivalent to tuition.  The legislature did too and at Prepaid's request exempted

Prepaid (not the student) from having to pay Florida State Schools the fee.  Unfortunately, about 13,000 Plan beneficiaries per year[7] will be affected by characterizing the TDF as something other than tuition or a registration fee.

51.     Prepaid's about-face on including the TDF in the Plan has paid dividends.  In its 2022 Annual Report Prepaid indicates that it has amassed more than $4 billion in surplus.  Prepaid has admitted that this surplus exists "primarily due to an expected decrease in estimated future contract benefit liability" or in other words Prepaid's decision to not make payments that Prepaid expected to contractually make when the Plans were originally sold has a huge win for Prepaid.

52.     To solidify its interpretation of the pre-2008 Plan Contract, Prepaid, through its Board and Board ED then changed the terms of its Plan Contract and argued that the new Plan Contract, which specifically did not permit payment for the TDF for anyone, including Plaintiffs and members of the Classes that did not have a TDF plan, to ensure that Prepaid would not have to pay the value for the TDF to Plaintiffs and the Classes.

53.     Lastly, Prepaid, through its Board and Board ED, made the decision to not give refunds to persons who did not use the Plan purchased during and prior to the 2006-2007 enrollment period. This led to further injury to Plaintiffs and members of the Classes.

**2020 Refunds**

54.     In large part, because Prepaid did not have to pay the TDF (because persons that went to Florida State Schools are exempt), Prepaid was required to pay far less to state institutions than was originally anticipated when the cost of the Plan was priced and when the contracts between Prepaid and Plaintiffs and members of the Classes were entered into.

---

[7] Every year about 10-15 thousand Plan Beneficiaries use their Plan to attend a Non-Florida State School.

55.     Another reason for this surplus is the 7-8% tuition increases per year that were assumed in pricing the Plan that have never occurred.

56.     Instead of providing refunds for all persons who had a Prepaid Plan, the Board chose only to refund monies to persons who paid for their plans after the 2006-2007 enrollment period.  The Board also chose to reduce the costs of those Prepaid Plans on a going forward basis.

57.     Persons who bought their Plans during and prior to the 2006-2007 enrollment period were not provided a refund or any price reduction.

58.     This decision had a profound, disparate, and unfair effect on persons who bought their Plans during or before the 2006-2007 enrollment period whose beneficiaries went to a Non-Florida State School.

59.     For example, Plaintiff Erica Lavina purchased a Tuition and Fee Plan during the 2006-2007 enrollment period and one after.    The cost for the pre-2006-2007 enrollment period Plan (which was purchased in 2007) was $16,309.70.  Ms. Lavina, based on Prepaid's current payment policy expects Prepaid to pay Ursinus $18,587.20 towards her daughter's tuition. However, the Plans that Ms. Lavina purchased in 2009 for her younger son had a cost of $13,952.95 (after the 2020 refund) and the expected payout if her younger son goes to a Non-Florida State School is $23,994.40.   Simply put, the Plan that was bought in 2009 cost $2,356.75 less and will pay out $5,407.20 more.  Again, this is patently unfair as well as disparate and morally wrong.

**Continuing Conduct**

60.     Both Plaintiffs' children continue to be Plan Beneficiaries and they both expect Prepaid through its Board and Board ED will continue to implement the foregoing policies and

conduct stated above absent Court intervention, all of which if unabated, will continue to injure Plaintiffs, members of the Classes, and the public.

61.     All conditions precedent to filing this complaint have been performed, excused or otherwise waived.

## CLASS ACTION ALLEGATIONS

62.     Erica Lavina wishes to be designated as "Class Representative," and as Class Representative brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all other persons similarly situated on behalf of the Future Relief Class defined as follows:

**Future Relief Class**

> All Purchasers of a Plan purchased prior to and through the 2006-2007 enrollment period who have not used their Plan to attend a Non-Florida State School as of the date of the filing of this complaint until entry of Judgment.

63.     Andrea Darlow wishes to be designated as "Class Representative," and as Class Representative brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all other persons similarly situated on behalf of the Damage Class defined as follows:

**Damage Class Definition**

> All Purchasers of a Plan purchased prior to and through the 2006-2007 enrollment period, where the Plan was used, or during this lawsuit will be used, to attend a Non-Florida State School

64.     Plaintiffs and these Class Members reserve the right to amend the Class definitions as discovery proceeds and to conform to the evidence.  Excluded from the Class and Subclass are all members of the judiciary, Plaintiffs' counsel, and persons employed by or family members of Plaintiffs' counsel.

65.     Numerosity (Rule 23(a)(1)).  Plaintiffs allege on information and belief that the number of each Class are so numerous that joinder of them is impractical.  Plaintiffs' belief is

based on public information indicating that there are approximately 10,000 Plan Beneficiaries that use the Plan to pay for a Non-Florida State School in any given year.  Numerosity is further buttressed because Prepaid and the other Defendants have a general business practice of not paying the TDF.  Accordingly, each Class will have tens of thousands of members.

66.     The Classes will be easily ascertained through Prepaid's records through the use of Prepaid's own computer data.  For the Future Relief Class, this includes all persons who have not yet used their Plan to pay benefits for a Non-Florida State School.   It will likewise be easy to do a simple data run that will exclude all persons that have used their benefits at a Florida State School.

67.     Commonality (Rule 23(a)(2)). There are common questions of law and/or fact that predominate over any questions affecting only individual members of each Class.  These principal common issues include the following:

(1) Whether the Legislature's failure to include the TDF as a "registration fee" under a Plan Contract and the exemption for beneficiaries who attend a Florida State School are violations of the Contracts Clause of the United States Constitution;

(2) Whether Prepaid's application of Florida Statutes to preclude the payment of the TDF as a "registration fee" to a Non-Florida State School is an illegal taking under the United States Constitution;

(3) Whether Prepaid's decision to administratively change the substantive payment terms of its contract, and/or the legislature creating an exemption for the TDF to Plan's purchased during and prior to the 2006-2007 enrollment period is an illegal taking under the United States Constitution;

(4) Whether Prepaid's application of Florida Statutes to preclude the payment of the TDF as a "registration fee" to a Non-Florida State School a violation of the Due Process Clause of either the Fifth or Fourteenth Amendments to the United States Constitution; and

(5) Whether Prepaid's Board Members and Board ED should be enjoined and required to pay all Future Relief Class Members an amount equal to the TDF on all future requests for payment.

68.     Typicality (Rule 23(a)(3)).  The claims of the Class Representatives are typical of the claims that would be asserted by other members of the Classes in that, in proving their claims, Plaintiffs will simultaneously prove the claims of all Class Members. Erica Lavina is a member of the Future Relief Class and Andrea Darlow is a member of the Damages Class.  Both are purchasers of a Plan and their beneficiaries either currently attend, attended, or will attend a Non-Florida State School.

69.     Adequacy (Rule 23(a)(4)). The Class Representatives are Florida Citizens who have no conflicts of interest and will fairly and adequately protect and represent the interests of each member of each respective Classes.  Additionally, the Class Representatives are fully cognizant of their responsibilities as Class Representatives and have retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action.  Each class counsel has extensive experience in class litigation.

70.     Rule 23(b)(2) (for the Future Relief Class):  Under Counts One, Three and Five Prepaid, the Board and the Board ED have acted and will continue to act on grounds or in a manner generally applicable to all members of the Future Relief Class, thereby making declaratory and injunctive relief to the entire Future Relief Class particularly appropriate.  Defendants have

systematically and routinely improperly interpreted its Plan Contract, and will continue to act this way affecting Erica Lavina and each Future Relief Class Member.

71.     Rule 23 (b)(3) (for the Damage Class).  In the alternative or in addition to a (b)(2) certification, there are several predominant common questions stated above.  Indeed, the questions of law or fact common to the Class Representative's claims and the claim of each member of the Class as described above predominate over any questions of law or fact affecting only individual members of each of the Class.  Moreover, class representation is clearly superior to other available methods for the fair and efficient adjudication of this controversy and is most likely the only way that Class Members will be properly compensated.

**COUNT ONE**
**(Against Prepaid, the Board, and the Board ED for an as applied Unconstitutional Impairment of the Contract Clause of the United States Constitution on behalf of the Future Relief Class)**

72.     Plaintiff Erica Lavina, individually and on behalf of the Future Relief Class, incorporates here by this reference the allegations contained in Paragraphs 1 through 71, inclusive.

73.     Erica Lavina, on behalf of herself and all Future Relief Class Members, seeks declaratory, equitable, and injunctive relief to prevent Prepaid, the Prepaid Board Members, and Prepaid's ED, from violating, the Contract Clause of the United States Constitution (U.S. Const. art. I, § 10, cl. 1). This claim is also brought pursuant to 42 U.S.C. § 1983.

74.     Erica Lavina and all Future Relief Class Members have an existing contractual relationship with Prepaid that provides certain contractual and property rights including the right to receive "registration fees" for 120 credit hours when the Plan Beneficiary attends a Non-Florida State School.

75.     The 2007 Legislation, which created and defined the TDF, and created an exemption from the TDF for persons with Prepaid Plans purchased prior to or during the 2006-

2007 enrollment period, is a substantial change to the Plan Contract and amounts to a potential loss of over $5,300 to each Future Relief Class Member.

76.     Also, because the Plan Contract is between a person and a state agency, the determination of whether the 2007 Legislation violates the Contract Clause is subjected to heightened scrutiny and a more stringent examination.

77.     Based on all circumstances that existed in the past and exist today, the creation and definition for the TDF, along with the exemption that applies to all Plan members who purchased their Plans prior to or during the 2006-2007 enrollment period—including those Plans used for beneficiaries who attend Non-Florida State Schools—is neither "reasonable" under the circumstances nor "necessary" to accomplish a public purpose. Indeed, the Legislature had available to it less drastic alternatives than impairing the Prepaid Plan for persons that used their Plan for beneficiaries who attended Non-Florida State Schools.

78.     Prepaid's, Prepaid's Board Members', and the Board ED's continued use of the 2007 Legislation to refuse to transfer a TDF amount to a Non-Florida State School will cause Erica Lavina and the Future Relief Class Members to suffer a substantial and future deprivation of their contract rights in violation of the U.S. Constitution.

79.     Plaintiff Erica Lavina and Future Relief Class Members have incurred and will continue to incur attorneys' fees and costs because of this proceeding, in amounts that cannot yet be ascertained, that are recoverable in this action under the provisions of 42 U.S.C. § 1988(b).

**COUNT TWO**
**(Against Prepaid, the Board, and the Board ED for an as Applied Unconstitutional Impairment of the Contract Clause of the United States Constitution on behalf of the Damage Class)**

80.     Plaintiff Andrea Darlow, individually and on behalf of the Damage Class, incorporates here by this reference the allegations contained in Paragraphs 1 through 71, inclusive.

81.     Andrea Darlow, on behalf of herself and all Damage Class Members, seeks declaratory, injunctive and monetary relief as a result of  Prepaid's, the Prepaid Board Members' and the Prepaid's ED's violation of the Contract Clause of the United States Constitution (U.S. Const. art. I, § 10, cl. 1). This claim is also brought pursuant to 42 U.S.C. § 1983.

82.     Andrea Darlow and all Damage Class Members have an existing contractual relationship with Prepaid that provides certain contractual and property rights including the right to receive "registration fees" for 120 credit hours when the Plan Beneficiary attends a Non-Florida State School.

83.     The 2007 Legislation, which created and defined the TDF, and created as exemption from the TDF for persons with Prepaid Plan purchased prior to or during the 2006-2007 enrollment period, is a substantial change to the Plan Contract and amounts to a potential loss of over $5,300 to each Damage Class Member.

84.     Also, because the Plan Contract is between a person and a state agency, the determination of whether the 2007 Legislation violates the Contract Clause is subjected to heightened scrutiny and a more stringent examination.

85.     Based on all circumstances that existed in the past and exist today, the creation and definition for the TDF, along with the exemption which applies to all Plan members who purchased their Plans prior to or during the 2006-2007 enrollment period—including those Plans used for beneficiaries who attend Non-Florida State Schools—is neither "reasonable" under the circumstances nor "necessary" to accomplish a public purpose. Indeed, the Legislature had available to it less drastic alternatives than impairing the Prepaid Plan for persons that used their Plan for beneficiaries who attended Non-Florida State Schools.

86.     Prepaid's, Prepaid's Board Members', and the Board ED's use of the 2007 Legislation to refuse to transfer the TDF amount to a Non-Florida State School has caused and will continue to cause Andrea Darlow and Damage Class Members to be underpaid by Prepaid about $44.17 per credit hour.

87.     Plaintiff Andrea Darlow and Damage Class Members have incurred and will continue to incur attorneys' fees and costs because of this proceeding, in amounts that cannot yet be ascertained, that are recoverable in this action under the provisions of 42 U.S.C. § 1988(b).

**COUNT THREE**
**(Against Defendant Prepaid, the Board, and the Board ED for**
**Violation of the Taking Clause of the United States Constitution on behalf of the Future**
**Relief Class)**

88.     Plaintiff Erica Lavina, individually and on behalf of the Future Relief Class, incorporates here by this reference the allegations contained in Paragraphs 1 through 71, inclusive.

89.     Erica Lavina, on behalf of herself and all Future Relief Class Members, seeks declaratory, equitable, and injunctive relief for a continuing and anticipated future violation of the Taking Clause contained in the Fifth Amendment to the United States Constitution, made applicable to the states in the Fourteenth Amendment (U.S. Const. Amends. V and XIV). This claim is also brought pursuant to 42 U.S.C. § 1983.

90.     The Prepaid Plan and the payment to a Non-Florida State School is a property interest–payment of 120 credit hours of "registration fee."

91.     Erica Lavina and all Future Relief Class Members hold valid Plan Contracts with Prepaid for the rights and privileges associated with the property rights granted by and existing in the Plan Contract.

92.     Prepaid, former Prepaid Board Members, and the former Prepaid ED made specific decisions in 2007 to encourage and persuade the state to provide a definition for the TDF that is

different than "tuition" and create an exemption from the TDF for all beneficiaries whose Plans were purchased prior to or during the 2006-2007 enrollment period.  The purpose of these acts by those state actors, as admitted by Prepaid and their agents, was to provide Prepaid with its current justification for not paying the TDF to a Non-Florida State School attended by a Plan Beneficiary.

93.     To firm up its position to refuse to transfer the TDF to a Non-Florida State School, Prepaid, through administrative action, also actively changed the substantive terms of the original Plan contact so it would provide additional arguments for why Plaintiff Erica Lavina and members of the Future Relief Class were not entitled to have the TDF transferred to a Non-Florida State School.

94.     Both of these actions are a taking and will be a violation of Erica Lavina's and the Future Relief Class's constitutionally protected interests without any just compensation. In fact, Defendants' actions will result in about a $5,300 loss for said Plaintiff and each said Class Member.

95.     Defendants are substantially likely to continue into the future to utilize its illegal taking as a justification to refuse to transfer the TDF to a Non-Florida State School.

96.     Plaintiff Erica Lavina and the Future Relief Class have incurred and will continue to incur attorneys' fees and costs because of this proceeding, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. § 1988(b).

## COUNT FOUR
### (Against Defendant Prepaid, the Board, and the Board ED for
### Violation of the Taking Clause of the United States Constitution on behalf of the Damage Class)

97.     Plaintiff Andrea Darlow, individually and on behalf of the Damage Class, incorporates here by this reference the allegations contained in Paragraphs 1 through 71, inclusive.

98.     Andrea Darlow, on behalf of herself and the Damage Class, seeks declaratory, injunctive and monetary relief for violation of the Taking Clause contained in the Fifth

Amendment to the United States Constitution, made applicable to the states in the Fourteenth Amendment (U.S. Const. Amends. V and XIV). This claim is also brought pursuant to 42 U.S.C. § 1983.

99.     The Prepaid Plan is a property interest–payment of 120 credit hours of "registration fee."

100.    Andrea Darlow and the Damage Class Members hold valid Plan Contracts with Prepaid for the rights and privileges associated with the property rights granted by and existing in the Plan Contract.

101.    Prepaid, former Prepaid Board Members, and the former Prepaid ED made specific decisions in 2007 to encourage and persuade the state to provide a definition for the TDF that is different than "tuition" and create an exemption from the TDF for all beneficiaries whose Plans were purchased prior to or during the 2006-2007 enrollment period.  The purpose of these acts by those state actors, as admitted by Prepaid and their agents, was to provide Prepaid with its current justification for not paying the TDF to a Non-Florida State School attended by a Plan Beneficiary.

102.    To firm up its position to refuse to transfer the TDF to a Non-Florida State School, Prepaid, through administrative action, also actively changed the substantive terms of the original Plan contact so it would provide additional arguments for why Plaintiff Andrea Darlow and members of the Damage Class were not entitled to have the TDF transferred to a Non-Florida State School.

103.    Both of these actions are a taking and are a violation of Plaintiff Andrea Darlow's and the Damage Class's constitutionally protected interests without any just compensation. In fact, Defendants' actions have and will result in about a $5,300 loss for said Plaintiff and each said Class Member.

104.     Andrea Darlow and the Damage Class have incurred and will continue to incur attorneys' fees and costs because of this proceeding, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. § 1988(b).

## COUNT FIVE
**(Against Defendant Prepaid, the Board, and the Board ED for Violation of the Due Process Clause of the United States Constitution on behalf of the Future Relief Class)**

105.     Plaintiff Erica Lavina, individually and on behalf of the Future Relief Class, incorporates here by this reference the allegations contained in Paragraphs 1 through 71, inclusive.

106.     Prepaid, through its Board and Board ED, by applying and implementing the provisions of Ch. 2007-225, Laws of Florida, in the manner described in this complaint, have acted and are substantially likely to continue to unconstitutionally deprive Erica Lavina and all Future Relief Class Members of their property and contractual rights under the Prepaid Plan without due process of law in violation of Amend V and Amendment XIV, Section 1, of the United States Constitution (U.S. Const. Amend. XIV, § 1) and 42 U.S.C. § 1983.

107.     Prepaid's current and substantially likely continued application and implementation of the TDF, through its Board and Board ED, against Erica Lavina and the Future Relief Class, are and will continue to be arbitrary, capricious, and unreasonable in at least the following respect, among others: the failure to define the TDF as a "registration fee" has the effect of circumventing the clear and unambiguous terms of the Prepaid Plan as advocated by Prepaid itself in 2007.

108.     Plaintiff Erica Lavina and the Future Relief Class have incurred and will continue to incur attorneys' fees and costs because of this proceeding in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. § 1988(b).

**COUNT SIX**
**(Against Defendant Prepaid, the Board, and the Board ED for Violation**
**of the Due Process Clause of the United States Constitution on behalf of the Damage Class)**

109.    Plaintiff Andrea Darlow, individually and on behalf of the Damages Class, incorporates here by this reference the allegations contained in Paragraphs 1 through 71, inclusive.

110.    Prepaid, through its Board and Board ED, by applying and implementing the provisions of Ch. 2007-225, Laws of Florida, in the manner described in this complaint, have acted unconstitutionally to deprive Andrea Darlow and all Damage Class Members of their property and contractual rights under the Prepaid Plan without due process of law in violation of Amend XIV, Section 1, of the United States Constitution (U.S. Const. Amend. XIV, § 1) and 42 U.S.C. § 1983.

111.    Prepaid's application and implementation of the TDF, through its Board and Board ED, against Andrew Darlow and the Damages Class were and are arbitrary, capricious, and unreasonable in at least the following respect, among others: the failure to define the TDF as a "registration fee" has the effect of circumventing the clear and unambiguous terms of the Prepaid Plan as advocated by Prepaid itself in 2007.

112.    Plaintiff Andrea Darlow and the Damage Class  have incurred and will continue to incur attorney's fees and costs because of this proceeding in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. § 1988(b).

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request the Court to:

a.      Certify two Classes—the Future Relief Class and the Damages Class;

b.      Appoint Erica Lavina the Class Representative for the Future Relief Class and Andrea Darlow as the Class Representative for the Damages Class;

c.      Appoint Zebersky Payne Shaw Lewenz, LLP and Hilgers Graben PLLC as Class

Counsel for both Classes;

d.       Issue a declaration regarding Florida Statute Sections 1009.24 and 1009.98, that (1) failure to define the TDF as "tuition" or include it as one of the other "registration fees" in a Plan; and/or (2) an across the board exemption from the TDF for all Plans purchased prior to or during the 2006-2007 enrollment period, as opposed to only those Plans used by beneficiaries attending a Florida State School, is unconstitutional as applied to Plaintiffs and all Class Members;

e.       Issue a declaration that the TDF are "registration fees" under Florida Statute Section 1009.24 and the Prepaid Plan;

f.       Issue an injunction against Prepaid and Board Members requiring them to include payment for the TDF on all future payments to all Class Members;

g.       Issue an injunction preventing Prepaid and the Board Members from seeking to enforce or enforcing Florida Statute Sections 1009.24 and 1009.98 in a manner that fails to define the TDF as "registration fees;"

h.       Issue an injunction requiring the Board and the Board ED to include in any amounts paid under a Plan to Non-Florida State Schools the amount of the TDF in the future;

i.       Award all costs of suit incurred in this action;

j.       Award all monetary damages suffered by Andrea Darlow and the Damages Class under Counts Two, Four, and Six;

k.       Award reasonable attorney's fees incurred in this action; and

l.       Award such other and further relief as the court may deem just and proper.

## **TRIAL BY JURY**

Plaintiffs request a jury trial on all issues so triable.

Dated January 2, 2024

Respectfully submitted,

**ZEBERSKY PAYNE SHAW LEWENS, LLP**

**<u>Edward H. Zebersky</u>**
Edward H. Zebersky, Esq. (FBN:908370)
Mark S. Fistos, Esq. (FBN: 909191)
110 Southeast 6th Street, Suite 2900
Fort Lauderdale, FL 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
ezebersky@zpllp.com
mfistos@zpllp.com
kgonzalez@zpllp.com

**HILGERS GARBEN, PLLC**
Alec Schultz, Esq. (FBN: 35022)
1221 Brickell Ave
Miami, FL 33131
aschultz@hilgersgarben.com
aallen@hilgergraben.com