# Exhibit D

# BLANK & MEENAN, P.A.
ATTORNEYS AT LAW

| | | |
|---|---|---|
| *Office Address:* | *Mailing Address:* | F. PHILIP BLANK* <br> TIMOTHY J. MEENAN <br> JOY M. RYAN** <br> ROBERT N. SECHEN*** <br> JOAN HUMPHREY ANDERSON <br> SANDRA L. SCHOONOVER <br> Q. TOD STUPSKI**** <br> MIRIAM O. VICTORIAN***** |
| 204 SOUTH MONROE STREET <br> TALLAHASSEE, FLORIDA 32301 <br> (850) 681-6710 | POST OFFICE BOX 11068 <br> TALLAHASSEE, FLORIDA 32302-3068 <br> FACSIMILE (850) 681-6713 <br> (850) 681-1003 <br><br> E-Mail: phil@blanklaw.com | SHIRLEY KERNS^ <br> INSURANCE REGULATORY CONSULTANT <br><br> WANDA CARTER, JD^ <br> LEGAL ASSISTANT |

*Florida Bar Certified in Health Law*
**Member of the Florida and District of Columbia Bars*
***Florida Bar Certified in City, County and Local Government Law*
****Certified Civil Mediator*
*****Member of Florida and Texas Bars*
^Not a Member of the Florida Bar & Not an Attorney

December 15, 2006

Thomas J. Wallace
Executive Director
Florida Prepaid College Board
1801 Hermitage Boulevard
Tallahassee, Florida 32308

> Re: General Counsel Opinion No. 06-04;
> Payment of Proposed New Fee Proposed by the Board of Governors of
> the State University System
> Our File No. 77.00

Dear Tom:

This opinion responds to your request dated December 1, 2006.

## Question Presented

On or about November 16, 2006, the Board of Governors (the "BOG") of the State University System considered and agreed to establish an Academic Enhancement Program (the "Program") throughout the State University System, and recommended that the Legislature grant authority to the University of Florida ("UF") Board of Trustees to implement a new student fee to support the new Program as a pilot project. The information considered by the BOG indicates the Program would eventually be expanded to include all the colleges and universities in the System.

Although not specified in the information considered, apparently the proposal to the Legislature would involve the charge by UF of a fee of five hundred dollars ($500.00) per semester to all new undergraduate students enrolling at UF. There are a number of questions relating to the proposal which are unanswered at this time, including whether the fee would be charged regardless of the number of hours the student enrolled for, whether the fee would be refunded in the event the student did not enroll after the first semester, whether the fee would be levied each semester, and whether the fee would fully apply to part-time students.

In addition, the information considered by the BOG did not include any draft of legislation which would accomplish these purposes.



BLANK 001460

Thomas J. Wallace
Page 2
December 15, 2006

      Your question is if the proposed fee is approved by the Legislature, whether the Florida Prepaid College Board (the "Board") would be required to pay such fees to UF on behalf of existing beneficiaries. In addition, you have asked what the responsibility of the Board would be to pay such fees to other universities if the "pilot program" were implemented throughout the System. You have also asked what the responsibility of the Board would be if the proposed fee were, in fact, considered to be "tuition". You have also asked what potential avenues of legal action may be available to purchasers and/or beneficiaries seeking to invalidate the Legislature's actions, or against the Board to require the Board cover such expenses for existing contract holders. Finally, you have asked what responsibilities the Board has to inform existing contract holders of the potential or final legislative action.

## Brief Answers

      Without specific additional Legislative direction, including amending the provisions of s. 1009.98, F.S., or similar language, the Board is not authorized to offer Prepaid College Program Plan (the "Plan") contracts that pay for the fee proposed by the BOG, whether solely to UF, or to other universities.

      The Board is under no statutory or contractual obligation to pay for the fee proposed by the BOG, whether solely to UF, or to other universities.

      In the event the BOG proposal is determined to be part of the registration fee as "tuition" or another fee, such as the matriculation (enrollment) fee, other than "additional fees," the Board would be required to cover such expenses for existing contract holders.

      Existing purchasers and/or beneficiaries would likely bring an action seeking various forms of relief, including a declaratory judgment against the Board which would hold that the contract between them and the Board requires the Board to cover the additional cost resulting from the legislative action.

      Existing purchasers and/or beneficiaries may also bring an action seeking to declare the legislation unconstitutional, arguing, among other things, that by limiting its scope to one institution in one county, the legislation is, in fact, a "local bill" and can only be enacted as such.

      Whether the Board has any obligation to inform existing contract holders of potential legislative action which may affect existing contracts, or statutes enacted by the Legislature which in fact affect existing contract does not appear to be governed by principles of contract law.

BLANK 001461

Thomas J. Wallace
Page 3
December 15, 2006

### Discussion

The statutes which establish the Prepaid College Board's Program, and related applicable statutes, clearly define the types of fees for which the Board is authorized to provide payment.

The Board has the authority to offer only certain types of prepaid advance payment contracts.[1] Within the Plan, the Board may offer a specific number and types of contracts.

Initially, the Board was authorized to offer contracts which cover the costs of registration (tuition and other specific fees) and the costs of dormitory residence.[2] Effective July 1, 1998, the Board was authorized to offer contracts which cover certain fees charged by colleges and universities which are specifically listed in s. 1009.24, F. S.[3]

While there are numerous additional required fees that a community college or university may charge, these additional fees are not included in any Board contracts and the Board does not pay for them.[4]

None of the authorized types of contracts include a fee as proposed by the BOG.

Without specific additional legislative authority, the Board may not expand the types of contracts it offers to include the fee proposed by the BOG.

As indicated above, in 1998, the Legislature authorized the Board to offer contracts covering certain fees. In that enactment, the Legislature clearly indicated its intent that the statute be applied prospectively.[5]

In the absence of clear legislative intent to the contrary, statutes are presumed to apply prospectively only.[6] Statutes may only be retroactively applied upon a two (2) step analysis.[7] The first step is to determine that the legislative intent is to apply the statute retroactively; the second step is to determine that the statute's retroactive application is constitutional.[8] Consistent

---

[1] See § 1009.98, Fla. Stat. (2006).
[2] See §1009.98(2), Fla. Stat. (2006).
[3] See §1009.98(2)(a)2 and (2)(b)2, Fla. Stat. (2006).
[4] See §1009.24(12) and (13), Fla. Stat. (2006).
[5] See §1009.98(2)(a)2 and (2)(b)2, Fla. Stat. (2006).
[6] See *Metropolitan Dade County v. Chase Federal Housing Corp.*, 737 So.2d 494 (Fla. 1999), *reh'g denied*, (Aug. 4, 1999); *Campus Communications, Inc. v. Earnhardt*, 821 So.2d 388 (Fla. DCA 2002), *review dismissed* (Fla. May 2, 2003).
[7] See *Pondella Hall for Hire, Inc. v. Lamar*, 866 So.2d 719 (Fla. 5th DCA 2004), *review denied*, 879 So.2d 623 (Fla. 2004).
[8] See *Promontory Enterprises, Inc. v. Southern Engineering & Contracting, Inc.*, 864 So.2d 469 (Fla. 5th DCA 2004).

BLANK 001462

Thomas J. Wallace
Page 4
December 15, 2006

with the enactment of the 1998 legislation, any such authority to offer new contract options or expansions for the payment of additional fees should be construed to apply only prospectively to contracts purchased after the legislative enactment becomes effective.

As a matter of contract, the Master Covenant, issued by the Board in the case of each purchase, governs the responsibilities of the Board to pay fees on behalf of beneficiaries, and controls the relationship between the Board, purchasers, and beneficiaries.

The 2006-2007 Master Covenant, §9.01 entitled "Additional Fees" clearly states "[s]tate universities and community colleges may charge fees in addition to tuition, local and dormitory fees described here. *The beneficiary will bear the cost of any such additional fees*, including, but not limited to, application fees, laboratory fees, meal plan fees and security deposits."[9]

The Master Covenant also clearly indicates that the terms of the contract and the benefits granted by the contract are subject to all of the applicable statutory and regulatory provisions, as amended from time to time, to include, but not limited to, any future legislative enactments.[10]

Although the provisions of the Master Covenant indicated in this opinion may have changed in citation, it is our understanding that the language which governs the questions answered in this opinion has remained the same since the inception of the Program.

In our opinion, absent specific legislative direction, the Board is under no contractual obligation to pay for the fees envisioned by the BOG proposal.

However, in the event the BOG proposal is determined to be part of the registration fees, either "tuition" or another registration fee, and not an "additional fee," the Board would be required to cover such expenses for existing contract holders. The Tuition Plans offered by the Board pay the costs of registration, which include the cost of tuition and specific fees.[11] Statutorily, the fees included in the registration fee are the beneficiary's tuition fee, financial aid fee, building fee, and Capital Improvement Trust Fund Fee.[12] A matriculation fee is listed in the Master Covenant as one of the registration fees that is paid for contract holders, but not in the applicable statutes.[13] By definition a matriculation fee is an enrollment[14] fee; depending on how the proposed fee is defined or applied, the Board would be required to pay the proposed fee for existing contract holders.

---

[9] *See* Prepaid College Board, The Florida Prepaid College Plan Prices & Master Covenant at 14 (2006) (emphasis added).
[10] *See Id* at 8.
[11] *See* §1009.97(3)(g), Fla. Stat. (2006).
[12] *See Id.*
[13] *See* Prepaid College Board, The Florida Prepaid College Plan Prices & Master Covenant at 8 (2006) (emphasis added).
[14] *See* Webster's New World College Dictionary 887 (4th Ed. 1999).

BLANK 001463

Thomas J. Wallace
Page 5
December 15, 2006

Existing purchasers and/or beneficiaries may bring an action seeking various forms of relief, including a declaratory judgment against the Board to secure the payment of the proposed fee as a contract benefit.[15] If the proposed fee is determined to be part of tuition or the cost of registration, a declaratory judgment would hold that the existing contracts between purchasers and/or beneficiaries and the Board require the Board to cover the additional cost resulting from the legislative action.

Existing purchasers and/or beneficiaries may also bring an action seeking to declare the legislation unconstitutional, arguing, among other things, that by limiting its scope to one institution in one county, the legislation is, in fact, a "local bill" and can only be enacted as such.

However, the legislation, if enacted appropriately, will likely be found to be constitutional, because it is only the proposed fee's initial implementation as a pilot project that will impact one entity, in one county. We understand that the BOG concept is to eventually replicate the implementation of the same fee by expanding the program to all colleges and universities in the Florida State University System, so that no one's equal protection rights will be violated.[16] As proposed, the fee appears to be rationally related to the legitimate government interest of levying fees to provide funds to enhance the academic programs at Florida's universities.[17]

In order to avoid the expense and uncertainty of litigation, we strongly suggest that the legislation be crafted so as to ensure that existing Prepaid contract purchasers and beneficiaries are not required to pay the fees proposed by the BOG.

If you have any further questions, please let me know.

Sincerely,

F. Philip Blank

FPB/kll

S:\ACTIVE CLIENT FILES\07700 PEEB\Opinion Letters\Opinion No. 06-04 121506.doc

---

[15] *See* Chapter 86, Fla. Stat. (2006).
[16] *But c.f. St. Vincent's Medical Center, Inc. v. Memorial Healthcare Group, Inc.*, 928 So.2d 430 (Fla. 1st DCA 2006).
[17] *See Lakeland Regional Medical Center v. Agency fro Health Care Administration*, 917 So.2d 1024 (Fla. 2d DCA 2006).

BLANK 001464