# Exhibit F

## HOUSE OF REPRESENTATIVES STAFF ANALYSIS

**BILL #:** HB 905  State University Student Fees
**SPONSOR(S):** Dean and others
**TIED BILLS:**   **IDEN./SIM. BILLS:** SB 1710

| REFERENCE | ACTION | ANALYST | STAFF DIRECTOR |
|---|---|---|---|
| 1) Committee on Postsecondary Education | 7 Y, 1 N | Tilton | Tilton |
| 2) Schools & Learning Council | | Tilton | Cobb |
| 3) Policy & Budget Council | | | |
| 4) | | | |
| 5) | | | |

### SUMMARY ANALYSIS

HB 905 permits the Board of Governors to delegate to a university board of trustees the authority to establish an academic enhancement fee to support an academic enhancement program approved by the Board of Governors. The bill stipulates that the academic enhancement fee will not be subject to statutory provisions governing the Florida Bright Futures Scholarship Program.

The fiscal impact of the bill is indeterminate. There are no guidelines as to the amount of the fee, who would pay the fee, or when the fee would go into effect. In addition, the bill includes no guidelines or criteria to guide the approval or disapproval of proposals from universities that may wish to create an academic enhancement program and charge the fee. To date, the Board of Governors has only approved an academic enhancement program at one state university – the University of Florida. The fee will not be covered by the Florida Bright Futures Scholarship Program. The impact of the fee on the Stanley G. Tate Florida Prepaid College Program (Prepaid Program) is not clear. The bill is silent with regard to the Prepaid Program, but because the University of Florida has indicated that fee revenues will be used, in part, to support instructional activities, the fee could be considered a form of "tuition" even though it is called a "fee". If the new "fee" is determined to be a part of tuition, the Florida Prepaid Tuition Board could be required to pay the amount on behalf of its contract holders. The fiscal impact of the fee on the Prepaid Program could be significant.

The bill may have constitutional issues. The establishment of tuition and fees is the responsibility of the Legislature. The lack of any guidelines governing the establishment and assessment of a mandatory academic enhancement fee may represent unlawful delegation of legislative authority.

On March 27, 2007, the Committee on Postsecondary Education adopted a strike-all amendment to HB 905. See Section IV. AMENDMENTS/COUNCIL SUBSTITUTE CHANGES.

**This document does not reflect the intent or official position of the bill sponsor or House of Representatives.**
STORAGE NAME:   h0905b.SLC.doc
DATE:           4/6/2007

# FULL ANALYSIS

## I. SUBSTANTIVE ANALYSIS

A. HOUSE PRINCIPLES ANALYSIS:

Ensure lower taxes – The bill authorizes the Board of Governors to delegate to a university board of trustees the authority to establish an academic enhancement fee.

B. EFFECT OF PROPOSED CHANGES:

**Background**

Section 1001.705(2)(c), F.S., delineates the constitutional duties of the Legislature with regard to state universities. This includes establishing tuition and fees.

Section 1009.01, F.S., defines "tuition" as the basic fee charged to a student for instruction provided by a public postsecondary educational institution.

Section 1009.24, F.S., provides specific statutory authority and guidelines for the fees and fines that state universities may assess. These include: tuition; out-of-state fees; activity and service fees; health fees; athletic fees; a financial aid fee; a Capital Improvement Trust Fund fee; a building fee; and a variety of user fees and fines. Except as otherwise provided by law, undergraduate tuition is established annually in the General Appropriations Act. The Board of Governors, or the board's designee, may establish tuition for graduate and professional programs and out-of-state fees for all programs in accordance with guidelines included in s. 1009.24(3), F.S. The sum of tuition and out-of-state fees assessed to nonresident students must be sufficient to offset the full instructional cost of serving such students. However, any adjustments to out-of-state fees or tuition for graduate and professional programs are limited to 10 percent in any year. The aggregate sum of the activity and service, health, and athletic fees may not exceed 40 percent of tuition. Any increase in the aggregate sum of these three fees is limited to 5 percent annually.

The value of awards from the Bright Futures Scholarship Program range from the amount required to pay 75% of tuition and fees at a public postsecondary education institution (Medallion Scholars and Gold Seal Scholars) up to the amount required to pay 100% of tuition and fees at a public postsecondary education institution, plus $600 per year for college-related expenses annually (Academic Scholars).[1]

The Stanley G. Tate Florida Prepaid College Program (Prepaid Program) was created by the Florida Legislature to provide a medium through which the cost of registration and dormitory residence could be paid in advance at a rate lower than the projected corresponding cost at the time of actual enrollment. Students who enroll in a state postsecondary institution pursuant to the provisions of s. 1009.98, F.S., are to be charged no fees in excess of the terms delineated in the student's advance payment contract.[2] The Prepaid Program offers advanced payment contracts for tuition plans, local fee plans, and dormitory plans. The tuition plans cover the registration fees associated with a specific number of hours of enrollment. Registration fees are defined in law to include tuition, the building fee, capital improvement fee, and student financial aid fee. As of June 30, 2006, a total of 1,146,676 Prepaid Plans have been purchased statewide and enrollment is growing.[3]

During its November 16, 2006 meeting, the Board of Governors approved a motion to establish an Academic Enhancement Program and to request legislative authorization for the Board of Governors to

---

[1] See ss. 1009.534, 1009.535, and 1009.536, F.S.
[2] See s. 1009.98, F.S.
[3] Florida House of Representatives, *Education Fact Sheets 2007*

**STORAGE NAME:** h0905b.SLC.doc  **PAGE: 2**
**DATE:** 4/6/2007

delegate authority to a university board of trustees to implement a new student fee to support the program. The Board of Governors approved the University of Florida to serve as the pilot for implementation of the program. The proposal presented during the meeting by representatives of the University of Florida (UF) indicates that UF plans to implement the program with new, incoming undergraduate students for the 2007-2008 year. According to documents distributed during the meeting:

- New, incoming undergraduate students will be assessed an academic enhancement fee of $500 per semester. Current students will not be affected.
- 100% of all new revenue will be earmarked for 200 new faculty and 100 new academic advisers.
- Students demonstrating financial need will not be burdened.
- The program will be monitored by the UF Board of Trustees and reviewed by the Board of Governors periodically.

**Effect of Proposed Changes**

HB 905 permits the Board of Governors to delegate to a university board of trustees the authority to establish an academic enhancement fee to support an academic enhancement program approved by the Board of Governors. The bill stipulates that the academic enhancement fee will not be subject to statutory provisions governing the Florida Bright Futures Scholarship Program.

The bill provides no guidelines as to the amount of the fee, who would pay the fee, when the fee would go into effect, or how the fee revenues must be used other than to support "an academic enhancement program approved by the Board of Governors."

The bill includes no guidelines or criteria to guide the approval or disapproval of the academic enhancement programs. As noted previously, to date, the Board of Governors has only approved an academic enhancement program at one state university – the University of Florida. The Board of Governors has not discussed any proposals with regard to the other state universities.[4] It is not known at this time how many other universities may seek to establish a similar program or what criteria the Board of Governors would use in reaching a decision to approve or deny such proposals.

The impact on the Prepaid Program is not clear. The bill is silent with regard to the Prepaid Program. The University of Florida has indicated that revenues from the academic enhancement fee will be used, in part, to hire additional faculty. Because it will be used to support instructional activities, the fee could be considered a form of "tuition" even though it is not called "tuition". If the new "fee" is determined to be a part of tuition, the Florida Prepaid Tuition Board could be required to pay the amount on behalf of its contract holders. This could have a significant impact on the actuarial reserves of the Prepaid College Trust Fund.[5]

C. SECTION DIRECTORY:

**Section 1:** Amends s. 1009.24, F.S., authorizing the establishment of an academic enhancement fee to support certain programs approved by the Board of Governors.

**Section 2:** Provides an effective date of July 1, 2007.

## II. FISCAL ANALYSIS & ECONOMIC IMPACT STATEMENT

A. FISCAL IMPACT ON STATE GOVERNMENT:

---

[4] Florida Board of Governors bill analysis of HB 905
[5] Florida Prepaid College Board bill analysis of HB 905

**STORAGE NAME:**  h0905b.SLC.doc  **PAGE:** 3
**DATE:**  4/6/2007

1. Revenues:

    See FISCAL COMMENTS.

2. Expenditures:

    See FISCAL COMMENTS.

B. FISCAL IMPACT ON LOCAL GOVERNMENTS:

1. Revenues:

    None.

2. Expenditures:

    None.

C. DIRECT ECONOMIC IMPACT ON PRIVATE SECTOR:

The bill stipulates that the fee is not covered by the Bright Futures Scholarship Program so families who may rely on that program to cover a portion of the costs associated with attending a state university will incur additional costs they may not have expected.

If the fee is not covered by the Prepaid Program, contract holders will incur additional costs in attending a state university approved to establish an academic enhancement program.

D. FISCAL COMMENTS:

The fiscal impact of the bill is indeterminate. The bill provides no guidelines as to the amount of the fee, who will pay the fee, or when the fee will go into effect.

In addition, the bill provides no guidelines or criteria to guide the approval or disapproval of proposals for academic enhancement programs from other institutions. To date, the Board of Governors has approved an academic enhancement program at one state university – the University of Florida. However, it is not known at this time how many other universities may wish to establish a similar program or what criteria the Board of Governors would use in reaching a decision regarding such proposals.

The University of Florida has indicated that its program will charge all new, full-time undergraduates $500 per fall and spring term, beginning in the 2007-08 academic year. Estimates provided by the Board of Governors project increased revenues of $8,450,000 for the first year of the program; $16,901,000 for the second year of the program; and, $25,351,500 for the third year of the program.[6]

The impact on the Prepaid Program is not clear. The bill is silent with regard to the program. Because the University of Florida has indicated that fee revenues will be used, in part, to hire additional faculty to provide instruction, the fee could be considered a form of "tuition" even thought it is not called "tuition". If the new "fee" is determined to be a part of tuition, the Florida Prepaid Tuition Board could be required to pay the amount on behalf of its contract holders. At the request of the Florida Prepaid College Board, Ernst & Young estimated that the fee would have the following fiscal impact on the Prepaid College Trust Fund if the Prepaid Board is required to cover the fee for existing customers:

> If the academic enhancement fee is implemented statewide and the Prepaid Board is required to pay the fee for existing customers, the liability will total $1.450 billion. The actuarial reserve

---

[6] Florida Board of Governors bill analysis for HB 905
**STORAGE NAME:** h0905b.SLC.doc **PAGE: 4**
**DATE:** 4/6/2007

of the Prepaid College Trust Fund would be reduced from $586 million to a negative $864 million.

If the academic enhancement fee is implemented only at the University of Florida and the Prepaid Board is required to pay the fee for existing customers, the liability will total $326 million. The actuarial reserve of the Prepaid College Trust Fund would be reduced from $586 million to $260 million.

### III. COMMENTS

A. CONSTITUTIONAL ISSUES:

1. Applicability of Municipality/County Mandates Provision:

This bill does not appear to require a city or county to expend funds or to take any action requiring the expenditure of funds.

The bill does not appear to reduce the authority that municipalities or counties have to raise revenues in the aggregate.

This bill does not appear to reduce the percentage of state tax shared with counties or municipalities.

2. Other:

Section 1001.705(2)(c), F.S., delineates the constitutional duties of the Legislature with regard to state universities. This includes establishing tuition and fees.

Because the establishment of tuition and fees is a constitutional duty of the Legislature, delegation of that responsibility, absent sufficient guidelines, may represent unlawful delegation of legislative authority and violate the separation of powers doctrine.

Florida's separation of powers doctrine aims to avoid an excessive concentration of power. Florida courts have opted for a formal interpretation. As a result, this makes it difficult for the Legislature to delegate decision-making authority to agencies and private organizations. The constitution's language is very explicit. Article II, Section 3, provides, "no person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."

The Florida Supreme Court, in *Askew v. Cross Key Waterways*, 372 So.2d 913 (Fla. 1978), provided a framework for measuring the constitutionality of legislative power delegations. The court adopted a formal interpretation of the delegation-of-powers doctrine. It acknowledged that "[w]here the Legislature makes the fundamental policy decision and delegates to some other body the task of implementing that policy under adequate safeguards, there is no violation of the doctrine." *Id.* at 921 (quoting *C.E.E.E.D., v. California Coastal Zone Conservation Commission*, 43 Cal.App.3d 306, 325 (Cal. App. 4 Dist. 1974)). However, the court warned, "[w]hen legislation is so lacking in guidelines that neither the agency nor the courts can determine whether the agency is carrying out the intent of the legislature in its conduct, then, in fact, the agency becomes the lawgiver rather than the administrator of the law." *Id.* at 918-919.

The Legislature must promulgate standards sufficient to guide administrative agencies in the performance of their duties. *Avatar Development Corporation v. State*, 723 So.2d 199 (Fla. 1998); *Florida Gas Transmission Company v. Public Service Commission*, 635 So.2d 941 (Fla. 1994); *Miami Dolphins, Ltd. V. Metropolitan Dade County*, 394 So.2d 981 (Fla. 1981); *Lewis v. Bank of Pasco County*, 346 So.2d 53 (Fla. 1977); *Flesch v. Metropolitan Dade County*, 240 So.2d 504 (Fla. 3d DCA 1970).

B.  RULE-MAKING AUTHORITY:

None.

C.  DRAFTING ISSUES OR OTHER COMMENTS:

Section 1009.01, F.S., defines "tuition" as the basic fee charged to a student for instruction provided by a public postsecondary educational institution. The University of Florida has indicated that revenues from the academic enhancement fee will be used, in part, to hire additional faculty. Use of the term "fee" to describe the proposed charge appears to be inconsistent with the current statutory definition of tuition.

D.  STATEMENT OF THE SPONSOR

No statement submitted.

## IV.  AMENDMENTS/COUNCIL SUBSTITUTE CHANGES

On March 27, 2007, the Committee on Postsecondary Education adopted a strike-all amendment to HB 905. The amendment:
- Limits the authority to assess an academic enhancement fee to the University of Florida.
- Authorizes the fee to be implemented beginning Fall 2008.
- Authorizes the fee to be assessed to any student who registers for an undergraduate course; includes the fee within the 40% cap on local fees and excludes the aggregate sum of the activity and service, health, athletic, and academic enhancement fees from the 5% cap on annual increases to these fees (*These provisions do not apply to new undergraduates who enter the University of Florida in Fall 2012 or thereafter*).
- Sets the academic enhancement fee at $500 per semester or $1,000 per year, whichever is less, for new undergraduate students who enter the University of Florida in Fall 2012 or thereafter.
- Provides that the fee is not covered by the Florida Bright Futures Scholarship Program for new undergraduate students entering the University of Florida in Fall 2012 or thereafter.
- Requires proceeds from the fee to be used to hire additional faculty and counselors to serve undergraduate students, improve the undergraduate student-faculty ratio, reduce class-size in undergraduate classes; and offer more high demand courses.
- Requires the University of Florida to provide grant aid or a fee waiver for the following students:
   o  Any student who demonstrates financial need unless the fee would otherwise be covered by the Florida Bright Futures Scholarship Program;
   o  Any student who is the beneficiary of an advanced payment contract issued by the Florida Prepaid College Board and entered into prior to July 1, 2007, unless the fee would otherwise be covered by the Florida Bright Futures Scholarship Program.
- Requires an annual report.
- Authorizes the Florida Prepaid College Board to provide an advanced payment contract to cover the academic enhancement fee.
- Exempts the Florida Prepaid College Board and the Florida Prepaid College Trust Fund from all payment of academic enhancement fees unless the beneficiary has an advanced payment contract that specifically covers the academic enhancement fee.