# Exhibit G

# FLORIDA PREPAID COLLEGE BOARD
## BOARD MEETING

DECEMBER 7, 2006
11:00 A.M.
HILTON GARDEN INN
TALLAHASSEE, FLORIDA

**MEMBERS PRESENT**

(constituting a quorum)
Ted Hoepner, Chairman
Duane Ottenstroer, Vice Chairman
Michael Agganis
David Armstrong
Llana O'Drobinak
Mark Rosenberg
Erin Sjostrom

**OTHERS**

Thomas J. Wallace, Executive Director, Florida Prepaid College Board
F. Philip Blank, Esq., General Counsel, Florida Prepaid College Board
Jacqueline Barreiros, Florida Prepaid College Board
Marie Cushman, Florida Prepaid College Board
Casey Fisher, Florida Prepaid College Board
Bill Nichols, Florida Prepaid College Board
Pieter Swart, Florida Prepaid College Board
Tom Goodrum, BlackRock
Patricia Courtois, Clarke Advertising
Natalie Delgado, Clarke Advertising
Kelly O'Brien, Clarke Advertising
Steve Scrudato, Deutsche Asset Management
John Taphorn, Deutsche Asset Management
Lucille Douglas, Deutsche Asset Management
Bladen Burns, Fiduciary Management, Inc.
Jim Van Horn, Intuition Systems, Inc.
Wendy Ings, Kelley Swofford Roy, Inc.
Susan Kelley, Kelley Swofford Roy, Inc.
Don Anderson, Northern Trust
Rich Deeter, Northern Trust
Kerry Nelson, Northern Trust
Mel Hamilton, Trusco Capital Management
Jim Kofron, Trusco Capital Management
Jeff Nelson, U.S. Trust Company
Alex Powers, U.S. Trust Company
Manuel Carvallo, Watson Wyatt Investment Consulting
Brian Hersey, Watson Wyatt Investment Consulting

Page 1 of 11

Snyder Discovery 000107

| | |
|---|---|
| **CALL TO ORDER** | Chairman Hoepner called the December 7, 2006, meeting of the Florida Prepaid College Board to order at 11:00 a.m. |
| **ADDITIONS TO AGENDA** | Chairman Hoepner called for additions to the agenda. There were no additions to the agenda. |
| **APPROVAL OF MINUTES** | Chairman Hoepner requested approval of the minutes of the September 18, 2006, workshop and the minutes of the September 19, 2006, Board meeting, which were included under Tab 1 of each member's notebook. Ms. Sjostrom moved approval of the minutes, as submitted. Mr. Ottenstroer seconded the motion and it passed unanimously. |
| **CHAIRMAN'S REPORT** | Chairman Hoepner began his report with a brief explanation on the Board of Governors (BOG) proposal to establish an Academic Enhancement Program. It is our understanding that the BOG will request legislative approval to implement a $500-per-semester fee to fund the program beginning with the 2007/2008 academic year. Mr. Hoepner stated that the information distributed at the BOG meeting indicates the program will initially be piloted at the University of Florida and the fee would be charged to all new undergraduate students. The BOG proposal would exempt the Prepaid College Plan and the Bright Futures Scholarship program from responsibility for coverage of the fee. |
| | Chairman Hoepner requested that Dr. Rosenberg provide the members with any additional explanatory comments, which might be helpful to the members in understanding the BOG intentions. |
| | Dr. Rosenberg stated that the information distributed to the members is adequate and at this point in time, correct. In the past, the Prepaid College Board has discussed contingencies that would allow the state university system to begin to break out of the framework of chronic under-funding and the dilemma of universities that are not adequately performing against their benchmarks nationally. The challenge faced today is graduating students into a global labor market, and the high degree of competitiveness. The BOG approved the pilot program, which still must be approved by the Legislature. It is a program that is going to be phased-in with an expectation that plans will be made to accommodate students that could be negatively impacted. |
| | Following a brief discussion among the members, Chairman Hoepner informed the members that the proposed academic enhancement fee |

Page 2 of 11

Snyder Discovery 000108

has caused confusion and frustration among Prepaid customers and has resulted in numerous e-mails and telephone calls from customers complaining that the fee is nothing more than a tuition increase and their Prepaid plan should cover the new fee. Board members expressed concern that, although the BOG proposal was identified as a "fee," some might consider it to be "tuition," because in the past these types of costs have been covered by tuition, not by a special fee.

Chairman Hoepner commented that it was his goal for the Board to develop a solution that would uphold the commitment the State of Florida made to all current customers that the program will cover the cost of tuition when their children are ready to attend college and at the same time, not impede the BOG. Mr. Hoepner stated that he requested Mr. Wallace to prepare a summary of the current statutory requirements on fees covered by the university tuition plan, calculate the rate of increase in current university tuition and local fees the proposed academic fee would represent and to develop a preliminary analysis comparing the number of Prepaid students attending a state university, to the total number of students enrolled.

Mr. Wallace distributed a copy of his report to each member and summarized his findings. In summary, the advanced payment contract for a university tuition plan includes the tuition fee, the financial aid fee, the building fee and the Capital Improvement Trust Fund fee. The university local fee plan covers the activity and service fee, the health fee and the athletic fee. Mr. Wallace reported that assuming a student enrolls in 30 credit hours during the academic year, the proposed fee represents a 41% increase in tuition. Assuming a student enrolls in 24 credit hours during the academic year, which is similar to the actual experience for the Prepaid population, the proposed fee represents a 51% increase in tuition.

Mr. Wallace further reported that as of Fall 2005, Prepaid students accounted for approximately 13% of the total enrollment at all eleven state universities. At the University of Florida, Prepaid students accounted for 17% of its total enrollment. Following a brief discussion, Mr. Wallace concluded his remarks by informing the members that Mr. Stanley Tate, past Chairman of the Board, wrote a letter dated November 20, 2006, advising that Mr. Tate had contacted and hired a law firm to prepare a lawsuit against the University of Florida, in an attempt to prevent the University from collecting the proposed academic enhancement fee. A copy of the letter was included in the report distributed to the members.

Chairman Hoepner next requested General Counsel Blank to present his legal opinion in response to questions he and Mr. Wallace asked the General Counsel.

Page 3 of 11

Snyder Discovery 000109

A copy of General Counsel Blank's Opinion No. 06-04 was distributed to each member. Mr. Blank stated that there are a number of unanswered questions related to the Board of Governors (BOG) proposal to implement an academic enhancement fee and to his knowledge the BOG did not include any draft legislation which would authorize the fee. In summary, the Board is not authorized to pay for the academic fee proposed by the BOG and has no statutory or contractual obligation to pay for the fee. The manner in which the Legislature eventually authorizes this new fee is critical to the effect that it will have on the Board's obligations.

Mr. Blank stated that the Master Covenant, which is part of every enrollment kit, is in fact part of the contract between the Board and the purchaser of the contract. The Master Covenant clearly delineates the fees covered by each of the three contracts offered by the Board and indicates that it is subject to applicable statutory and regulatory provisions as may be amended from time to time.

Based on what is known today, Mr. Blank opined that there are two types of legal actions that could potentially be brought against the Board. Existing purchasers could bring an action seeking a declaratory judgment, which would hold that the contract between them and the Board requires the Board to cover the fee. The second type of action would seek to declare the fee legislation unconstitutional if drafted in a manner that would only affect the University of Florida, which is included in one county, and it may have some impact due to what is called the local bill rule. Mr. Blank advised that in order to avoid the expense and uncertainty of litigation, the legislation needs to be crafted to clearly ensure that any Prepaid contract holder and beneficiary, as of the date of the legislation, are not required to pay the academic enhancement fee.

Mr. Agganis stated that he is committed to helping Floridians save for their children's future college education by providing an affordable college program and was very concerned the fee would have a negative impact on the ability for low-income families to send their children to college.

Mr. Armstrong commented that at a recent Council of 100 meeting, President Machen explicitly stated that low-income or need based students would be exempted from paying the proposed fee.

Following a lengthy discussion among the members, Chairman Hoepner stated that the Board has a responsibility to the families that have saved their hard earned money by purchasing a Prepaid College Plan to uphold the guarantee that their plan will cover the cost of tuition when their children are ready to attend college. Mr. Wallace reported earlier that in 2005, Prepaid students accounted for

approximately 13% of the total enrollment at state universities. For purposes of our discussion, if we take a conservative approach and assume Prepaid represents between 15-20% of the total enrollment, exculping Prepaid customers from paying the fee would allow the Legislature to keep their promise to contract holders and still accommodate the university system so as to allow them to receive 80-85% of what they requested. And, ultimately the universities will receive 100%, after all the current Prepaid students matriculate.

Following additional discussion among the members, Mr. Armstrong moved that the Board recommend to the Legislature and to the Board of Governors if it chooses to authorize the proposed academic enhancement fee, the Legislature should exempt the Board and all current Prepaid Plan holders from having to pay the additional fee. As part of the motion, if the fee is authorized by the Legislature, the Board recommends that they be given the statutory authority to provide a plan to cover these additional fees for new enrollees. Dr. Rosenberg seconded the motion and it passed unanimously.

Chairman Hoepner stated that a letter will be sent to the Governor and to each legislator requesting their favorable consideration of the Board's recommendation. In addition, the Board will inform our customers of our recommendation in the next issue of College Bound. Staff will also work with Ernst & Young, the Board's actuary firm, to develop estimates of the impact the Board of Governors fee proposals will have on the actuarial reserve balance and on contract pricing.

Chairman Hoepner requested Mr. Wallace to summarize the Board of Governors (BOG) proposal to implement a student technology fee. Mr. Wallace stated that the BOG is proposing a new per-credit-hour technology fee that will be charged to each student enrolled in a public university. The proposal would allow Florida public universities to charge up to a $10 per credit hour technology fee. Specific details on how the proposed fee would be implemented are not known at this time.

Ms. O'Drobinak commented that if the Board of Governors continues to add new types of student fees, the original framework of the three Prepaid Plan contracts and what fees they cover will need to be addressed in the future.

Ms. Sjostrom suggested that future marketing materials may need to be revised to clearly highlight the fees covered under each plan and should be cautious on the use of the word, "guarantee."

Staff was requested to monitor the technology fee proposal as it makes its way through the legislative process.

Page 5 of 11

Snyder Discovery 000111

| | |
|---|---|
| **FOUNDATION SCHOLARSHIP GUIDELINES** | Chairman Hoepner reported that legislation passed last year authorized the Prepaid College Foundation to use escheated monies received from the Prepaid College Trust Fund to fund additional scholarship programs. As part of the legislation, the Prepaid College Board is required to approve the criteria for determining which scholarship programs will be funded by the Foundation. Mr. Hoepner reported that at the September meeting, the Foundation Board finalized the scholarship funding guidelines and is requesting approval of the guidelines from the Prepaid College Board.

Mr. Wallace presented the proposed guidelines. A copy of the guidelines was included under Tab 2 of each member's notebook.

Chairman Hoepner requested a motion to approve the Scholarship Funding Guidelines, as presented. Mr. Ottenstroer moved approval of the Scholarship Funding Guidelines, as presented. Ms. Sjostrom seconded the motion and it passed unanimously.

Chairman Hoepner reported that the Prepaid College Foundation re-titled the Lawton Chiles Scholarship Program, to the Governor's Recognition Scholarship Program, which will allow students to recognize the contributions made by any of Florida's past governors in their essays. |
| **STANLEY G. TATE NAME CHANGE UPDATE** | Chairman Hoepner provided the members with a brief update on the implementation of the Stanley G. Tate name change. A summary of the name change implementation was included under Tab 2 of each member's notebook. |
| **INVESTMENT COMMITTEE REPORTS** | Chairman Hoepner reported on the activities of the Investment Committee meeting, and the acceptance of the 2006 third quarter investment performance reports. The investment performance reports were included under Tab 3 of each member's notebook.

Chairman Hoepner requested a motion to accept the third quarter 2006 investment performance reports for the Prepaid College Plan and for the College Investment Plan as submitted and accepted by the Investment Committee. Mr. Agganis moved acceptance of the third quarter 2006 investment performance reports for the Prepaid College Plan and the College Investment Plan as submitted and accepted by the Investment Committee. Mr. Ottenstroer seconded the motion and it passed unanimously. |
| **INVITATION TO NEGOTIATE UPDATE** | Chairman Hoepner informed the Board that on October 16, 2006, the Board received 30 proposals in response to the Invitation to Negotiate (ITN) to obtain proposals from firms qualified to provide investment |

manager services for a large cap value-oriented equity portfolio. The evaluation committee has begun their evaluation of each of the respondent's proposals and will submit its rankings and report to the Investment Committee and to the Board at the March 2007 meeting.

A summary status report was included under Tab 3 of each member's notebook.

**COMPREHENSIVE INVESTMENT PLAN AMENDMENTS**

Chairman Hoepner reported that the Investment Committee recommended that the Board approve the changes to the Comprehensive Investment Plans (CIP) for both the Prepaid College Plan and for the College Investment Plan, as recommended by Watson Wyatt Investment Consultant. The CIPs were revised to reflect the Board's previously approved revision to the asset allocation policy to limit the equity segment of the total Fund to the current actuarial reserve balance or 15% of the market value of the total portfolio, whichever is less and the establishment of equity allocation targets and allowable ranges. In addition, Watson Wyatt recommended the investment manager performance objectives be amended by requiring the return expectations to exceed the benchmark return. The current return expectation policy allows the manager to "meet or exceed" the benchmark return. Watson Wyatt also recommended that the current provision allowing the use of futures be amended to additionally include the use of options and swaps as an authorized derivative.

A summary of the amendments to the Comprehensive Investment Plans was included under Tab 3 of each member's notebook.

Chairman Hoepner requested a motion to approve the Investment Committee's recommendation to amend the CIPs for both the Prepaid College Plan and for the College Investment Plan, as presented. Ms. O'Drobinak moved approval of the amendments to the CIP for both the Prepaid College Plan and for the College Investment Plan, as presented. Mr. Agganis seconded the motion and it passed unanimously.

**EXECUTIVE DIRECTOR'S REPORT**

**OPEN ENROLLMENT UPDATE**

Executive Director Wallace reported that the 2006/2007 Prepaid Plan enrollment began on October 16, 2006, and will continue through January 31, 2007. As of November 24, the Board received a total of 23,980 Prepaid applications for all plan types. Of the total applications

received, there were 13,702 tuition applications, 6,887 local fee applications and 3,391 dormitory applications. Mr. Wallace reported that of the total Prepaid applications received, close to 80% have been completed through the Web site.

A copy of the summary enrollment report was included under Tab 4 of each member's notebook.

**ESCHEATMENT OF UNCLAIMED ACCOUNTS**

Executive Director Wallace stated that the Board is required to annually review and approve the list of unclaimed refunds and inadvertent payments, which have remained unclaimed for a period of seven years, and are scheduled to escheat to the Prepaid College Trust Fund on December 31, 2006. As of October 31, 2006, there were 38 purchasers due a refund, but remained unclaimed. The total amount of the unclaimed refunds scheduled to escheat on December 31 is $55,155.11.

Mr. Wallace reported that in addition to unclaimed refunds, any benefits that have not been used within ten years after the scheduled matriculation date of the beneficiary escheat to the Trust Fund. As of October 31, 2006, there were 381 purchasers that will reach the 10-year expiration period on December 31, representing a total amount of $615,295.47.

Mr. Wallace informed the members that to notify and provide affected customers ample opportunity to respond, the Board mailed written notices to each purchaser indicating the procedure which the purchaser must follow to receive their refund and posted the names and city of residence of each purchaser on the Board's Web site. The Board also contracts with the IRS to use their mail forwarding program to notify purchasers that they are due a refund.

A summary of the amounts scheduled for escheatment was included under Tab 4 of each member's notebook. Mr. Wallace stated that the amounts reflected on the summary schedule will be reduced by any payments made to purchasers through December 31, 2006.

Mr. Wallace also stated that the Board has the authority to transfer any amounts escheated into the Prepaid College Trust Fund, to the Prepaid College Foundation to fund Prepaid College scholarships.

Chairman Hoepner requested a motion to approve the list of unclaimed refunds scheduled to escheat on December 31, 2006, and any refunds processed through December 31, 2006, will be removed from the list of unclaimed refunds. Ms. Sjostrom moved approval of the list of unclaimed refunds scheduled to escheat on December 31, 2006. Mr. Ottenstroer seconded the motion and it passed unanimously.

Snyder Discovery 000114

Chairman Hoepner next requested a motion to authorize the transfer of the total amount of escheated funds on December 31, 2006, for unclaimed refunds and for unused benefits, from the Florida Prepaid College Trust Fund to the Florida Prepaid College Foundation. Ms. Sjostrom moved approval to authorize the transfer of total amount of escheated funds on December 31, 2006, for unclaimed refunds and for unused benefits, from the Florida Prepaid College Trust Fund to the Florida Prepaid College Foundation. Mr. Ottenstroer seconded the motion and it passed unanimously.

**CONTRACT APPROVAL**

Executive Director Wallace reported that the contract between the Florida Prepaid College Board and the Florida Prepaid College Foundation expires on December 9, 2006. The current contract allows the Board to extend the contract for five additional one-year periods. Mr. Wallace recommended that the contract be extended and the term be amended from five, one-year contract extension options, to a single five-year contract extension period. The term of the extension period will begin on December 10, 2006, and end on December 9, 2011. A summary of the contract provisions was included in Tab 4 of each member's notebook.

Chairman Hoepner requested a motion to approve extending the contract between the Florida Prepaid College Board and the Florida Prepaid College Foundation for a full five-year period. The term of the extension period will begin on December 10, 2006, and end on December 9, 2011. Mr. Agganis moved approval of the five-year contract extension between the Florida Prepaid College Board and the Florida Prepaid College Foundation. Mr. Ottenstroer seconded the motion and it passed unanimously.

**GENERAL COUNSEL'S REPORT**

**ADMINISTRATIVE RULES**

General Counsel Blank informed the Board that the administrative rules approved at the September meeting have been filed for adoption.

Mr. Blank informed the Board that Administrative Rule number 19B-16.005 requires the Board to annually approve the maximum account balance limit for a single beneficiary who is enrolled in the Prepaid College Plan, the College Investment Plan, or both. Mr. Blank reported that staff recommends that the maximum account balance amount of $341,000 remain the same for the next year.

Mr. Blank next reported that Administrative Rule number 19B-

Snyder Discovery 000115

16.012(3) requires the Board to annually determine the amount of the administration fee that will apply to all College Investment Plan accounts. Mr. Blank reported that staff is recommending that the administrative fee remain at 75 basis points.

In addition, Mr. Blank reported that Administrative Rule number 19B-16.003(1) needs to be amended to reflect the updated form number for the Participation Agreement.

A copy of the proposed rule changes was included under Tab 5 of the member's notebook.

Chairman Hoepner requested a motion to approve maintaining the maximum account balance at $341,000, for keeping the annual administrative fee for the College Investment Plan at the current 75 basis points for the next year and for amending the administrative rule to reflect the updated form number as presented by Mr. Blank. Mr. Ottenstroer moved to approve the motion as stated by Chairman Hoepner. Ms. Sjostrom seconded the motion and it passed unanimously.

**LEGISLATION UPDATE**

General Counsel Blank provided an update on the current legislative activity. A list of the House of Representatives' Council Chairs and a list of Senate Committees was included under Tab 5 of each member's notebook.

**2005/2006 ANNUAL FINANCIAL AUDITS**

Ms. Emily Rhoden, Engagement Manager for Pricewaterhouse-Coopers, reported that in the opinion of the auditors, the program's 2005/2006 financial statements for both the Florida Prepaid College Board and for the Florida Prepaid College Foundation fairly present the financial position of the program and the operations and the cash flows for the year ended June 30, 2006, in conformity with generally accepted accounting principles.

Ms. Rhoden reported that, in accordance with Government Accounting Standards Board Statement No. 34, the financial statements include a section entitled, "Management Discussion and Analysis." Copies of the financial statements for both the Prepaid College Board and for the Prepaid College Foundation were included under Tab 6 of each member's notebook.

Chairman Hoepner requested a motion to accept the 2005/2006

Snyder Discovery 000116

annual Financial Statements and Compliance Report for the Prepaid College Board and for the Prepaid College Foundation, as prepared and presented by PricewaterhouseCoopers. Ms. O'Drobinak moved approval of the motion. Mr. Agganis seconded the motion and it passed unanimously.

**OTHER**

**2007 BOARD MEETING DATES** — Chairman Hoepner advised the Board that the meeting dates for calendar year 2007 were included under Tab 7 of the Board notebook. The next meeting is scheduled for Wednesday, March 14, 2007, in Tallahassee.

**OTHER** — Mr. Agganis announced that as a courtesy to the Attorney General-elect, he plans on stepping down from the Prepaid College Board. Mr. Agganis thanked the Board members and staff for the opportunity of working together and commented that he enjoyed working with everyone during his term on the Board.

Mr. Ottenstroer commented that this may be his last Board meeting as the designee for the Chief Financial Officer, but hoped to be reappointed to the Prepaid College Board.

**ADJOURN** — There being no further business to come before the Board, the meeting was adjourned at 12:45 p.m.

Snyder Discovery 000117