UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 0:24-cv-60001-MD

ERICA LAVINA and ANDREA DARLOW,
individually and on behalf of all those
similarly situated,

                Plaintiffs,                             **CLASS REPRESENTATION**

v.

JOHN D. ROOD, in his capacity as Chairman of the
Florida Prepaid College Board; ADRIA D.
STARKEY, in her capacity as Vice Chair of the
Florida Prepaid College Board; MARK AGUSTIN,
in his capacity as a member of the Florida Prepaid
College Board; SLATER BAYLISS, in his capacity
as a member of the Florida Prepaid College Board;
KATHRYN HEBDA, in her capacity as a member of
the Florida Prepaid College Board; RADFORD
LOVETT, in his capacity as a member of the Florida
Prepaid College Board; TROY MILLER, in his
capacity as a member of the Florida Prepaid College
Board; and KEVIN THOMPSON, in his capacity as
Executive Director of the Florida Prepaid College
Board,

                Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs respond to and oppose Defendants' Motion to Dismiss, ECF No. 24 ("Motion"), as follows:

## I.      PRELIMINARY STATEMENT

There is no basis for dismissal, as binding precedent prohibits Defendants from asserting Eleventh Amendment immunity. It is black letter law that defendants sued in their official capacities to enjoin ongoing violations of federal law (exactly the fact pattern here) are *not* entitled to assert the Eleventh Amendment as a defense. That is the reason Defendants cannot cite a single case—not one—granting dismissal on facts analogous to those present here. Nor do they provide any credible argument that the prospective relief requested is essentially monetary.

Additionally, irrespective of Eleventh Amendment immunity, Defendants' challenge to the merits of the Amended Complaint fails. Defendants admit that the Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs." Motion at 6. Defendants do not do this though. A careful reading of the Amended Complaint (ECF No. 15) shows Plaintiffs' claims are all timely and plausibly pleaded. Defendants entirely fail to analyze the elements necessary to state the claims Plaintiffs pleaded, opting instead to focus on tangential and frankly irrelevant points. Instead of presenting the facts actually pleaded in the Amendment Complaint, Defendants simply survey what Prepaid plans were enacted when and the statutes they believe apply, as if that is all that matters here. Motion at 2-5.   They also raise factual disputes about immunity and other issues that cannot be decided at the dismissal stage—especially about the purported impact of declaratory and injunctive relief on the "state treasury" and the supposed roles of Defendants. Motion at 10-11, 15-16.

As detailed below, Defendants' Motion should be denied.

## II.      ARGUMENT

### A.  PLAINTIFFS' CASE

Plaintiffs' Amended Complaint does not ignore the statutes Defendants cite (as Defendants argue, Motion at 9) but places them in context of their passing (including the reasons and purposes for the statutes) and the manner of Defendants' application of them, which are what the relevant federal law requires the Court to determine. *See United States Trust Co. v. New Jerse*y, 431 U.S. 1, 17, 25-26, 29 (1977) (elements of federal Contract Clause claim: (1) whether the law substantially impairs a contractual relationship; (2) whether there is a significant and legitimate public purpose for the law; and (3) whether the adjustments of rights and responsibilities of the contracting parties are based upon reasonable conditions and are of an appropriate nature.); *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978) (elements of federal as-applied regulatory Taking claim: (1) the economic impact of the regulation on the plaintiff; (2) the extent to which the regulation interferes with the plaintiff's investment-backed expectations; and (3) the character of the governmental action).

To this end, according to the Amended Complaint, Plaintiffs bring this class action on behalf of the Class of Purchasers who have all purchased a Florida Prepaid College Plan from the Florida Prepaid College Board ("Prepaid Board") during or prior to the 2006-2007 enrollment period. ECF No. 15 at ¶ 1.  The Prepaid Board operates independently under the direction, control, monitoring, and polices set by Defendants, each of whom can enforce the powers and duties of the Prepaid Board, including allowing it to act or refrain from acting regarding the relief requested in this case and any ancillary effects therefrom. *Id.* at ¶¶ 14-21.  Plaintiffs and Class Members all entered form contracts ("Plan Contracts," *e.g.*, ECF No. 15-3 (§ 5.06)) for a "tuition plan" (the "Plan") benefit that allows families to prepay and "lock in" the cost of college tuition into a Prepaid

Fund for safekeeping—with the further benefit that if the student ("Beneficiary") attends a private or out-of-state school ("Non-Florida State School"), then the equivalent benefit will be transferred to that school. *Id.* at ¶¶ 23-24, 27; ECF No. 15-3 (§ 5.06). This fund is not the "state treasury" (not state tax revenue or other treasury funds) but a separate fund that Plaintiffs allege Defendants direct, control, oversee, and monitor with the Prepaid Board that operates independently and currently touts a $4 billion surplus in the separate Prepaid fund that is attributable to Purchasers' deposits and Defendants' savings from the Tuition Differential Fee ("TDF") described below. *See* ECF No. 15 at ¶¶ 7, 14-21, 58, 60.  The premise behind the whole Prepaid arrangement is thus to help families save for and be assured their potential college tuition value was prepaid, whether the Beneficiary ultimately attends a state school in Florida (Florida State School) or a Non-Florida State School. ECF No. 15 at ¶¶ 1, 22, 38; ECF No. 15-2 at 2-3, 4.  And the Plan Contract Plaintiffs entered secured these fundamental substantive rights and benefits. ECF No. 15-3.

But the Prepaid landscape changed significantly in 2007, and this premise was no longer accurate, nor these rights secured. The state and its agencies did not want to take the political risk of appearing to raise tuition at state universities, so they used subterfuge and concocted a tuition "fee" whereby the Legislature could authorize an effective tuition increase without appearing to raise tuition. *See* ECF Nos. 15-5 at 9-13, 15-6, 15-7 at 3-6, 15-8 at 3, 15-9 at 2, 15-10 at 13:8-22, 14:14-21, 45:1-24, 50:20-25, and 15-14 at 2. The impetus of the tuition "fee" was fundamentally shrouded in political subterfuge, not to serve any legitimate public purpose, and its effects have significantly impaired the rights of Plaintiffs.  And Defendants' predecessors knew this. Along these lines, in late 2006, the Florida Board of Governors floated a proposal regarding an "Academic Enhancement Fee" that the Florida Legislature adopted and eventually enacted as a *Tuition* Differential Fee ("TDF") (Chapter 2007-225, Laws of Florida)—but only with significant,

concerned, and frank input from the Prepaid Board and its then-members, which reveals the real purpose of the TDF is a tuition increase that as a substantive right and benefit should be covered under Plan Contracts of Plaintiffs. ECF No. 15 at ¶¶ 32-47; ECF Nos. 15-5 at 9-13, 15-6, 15-7 at 3-6, 15-8 at 3, 15-9 at 2, 15-10 at 13:8-22, 14:14-21, 45:1-24, 50:20-25.  Defendants entirely ignore this critical point that is essential to understanding this case.

To paraphrase Shakespeare, "tuition by any other name is still tuition."[1] And realizing (with advice from its legal counsel) that the TDF was really tuition that the Prepaid Board would have to pay under a Purchaser's Plan Contract, Prepaid Board members and representatives told the Florida Legislature that if it did impose this new *tuition* "fee," they opined it would logically and legally be covered as tuition under the Plan Contract, and the Board would have to pay it—so the Legislature should exempt students with then existing contracts from being obligated to pay the TDF. *See* ECF No. 15 at ¶¶ 31-43, 89-90. Legislative staff even considered the "fee" to be tuition. *See* ECF No. 15-6 at 2, 5.  This lobbying worked, and the Florida Legislature eventually amended the TDF bill to exempt the Prepaid Board from being on the hook to pay the TDF to a Florida State School. *Id*. at ¶¶ 44-47.  Afterward, the Prepaid Board under the direction and policies of the then Prepaid Board Members and Executive Director, unilaterally amended the substantive contract terms of *all* Plan Contracts through changing their administrative rules, and they thereby incorporated the exemption from payment of the TDF for these Purchasers and even started separate prepaid plans for the TDF going forward. ECF No. 15 at ¶¶ 5, 48-60, 90; Rule 19B-5.001, F.A.C.

Nothing though in the passing or text of the TDF law put anyone on notice that Defendants would later apply the TDF exemption the way Defendants have, are, and will do so in the future.

---

[1] *See* <u>Romeo and Juliet</u> (Act 2, Scene 2).

Based on the allegations of the Amended Complaint, which the Court at this juncture must accept as true, if there were no exemption, Defendants admittedly were contractually committed to pay an amount equal to the TDF as tuition for its Plan Beneficiaries, whether attending Florida State Schools or Non-Florida State Schools. *See* ECF No. 15 at ¶¶ 31-43, 57, 89-90.  This confirms that the payment of the TDF under Plaintiffs' and Class Members' Plan Contract should be considered a substantive right and benefit and the Prepaid Board knew and knows so, and the purpose of the TDF was simply political cover for a tuition increase. This substantive right is and will continue to be effectively denied, because there is an exemption from payment of the TDF granted by the Legislature and the exemption is, and will be, applied by Defendants through the Prepaid Board to deny Plaintiffs and Class Members any TDF benefit value (the Prepaid Board admits exists and must be paid under the Plan Contracts entered by Plaintiffs) when their Beneficiaries attend Non-Florida State Schools. ECF No.15 at ¶¶ 30 (noting the factual admission under oath that TDF exemption provides a benefit), 51, 54-55, 57, 67, 82-83, 89-92.

The bottom line is the TDF exemption and associated contract amendments as applied by Defendants continue to take away and will take away Plaintiffs' vested substantive rights and benefits and the bases for the TDF were fundamentally shrouded in political subterfuge. Thus, they must pass constitutional scrutiny.  Plaintiffs claim they cannot, as applied by Defendants under the Contract and Takings Clause of the U.S. Constitution. *See* ECF No. 15 (Counts I-II).  As relief, Plaintiffs pray that the Court enter two prospective declarations and a single prospective injunction as follows against application of the TDF law by Defendants:

Issue a declaration that Prepaid's Board Members' and the Board ED's continuing interpretation and application to Plaintiffs and Class Members whose Plan Beneficiaries attend Non-Florida State Schools and to their Plan Contracts, of the TDF exemption and TDF definition originally added by Chapter 2007-225, Laws of Florida (and as subsequently amended) and associated laws (§§ 1009.01, 1009.24, 1009.97, and 1009.98, Fla. Stat.) and application of the

related changes Defendants made to the Plan Contracts of Plaintiffs and said Class Members in response thereto, are violations of the Contracts Clause of the United States Constitution;

Issue a declaration that Prepaid's Board Members' and the Board ED's continuing interpretation and application to Plaintiffs and Class Members whose Plan Beneficiaries attend Non-Florida State Schools and to their Plan Contracts, of the TDF exemption and TDF definition originally added by Chapter 2007-225, Laws of Florida (and as subsequently amended) and associated laws (§§ 1009.01, 1009.24, 1009.97, and 1009.98, Fla. Stat.) and application of the related changes Defendants made to the Plan Contracts of Plaintiffs and said Class Members in response thereto, are violations of the Takings Clause of the of the United States Constitution;

Enjoin Defendants from applying the TDF exemption and TDF definition originally added by Chapter 2007-225, Laws of Florida (and as subsequently amended) and associated laws (§§ 1009.01, 1009.24, 1009.97, and 1009.98, Fla. Stat.) and applying Defendants' changes to the Plan Contracts of Plaintiffs and Class Members whose Plan Beneficiaries attend Non-Florida State Schools[.]

ECF No. 15 at pp. 30-31.  None of this relief requests compensation for past conduct.

## B. DEFENDANTS CANNOT INVOKE THE ELEVENTH AMENDMENT.

With respect to the Eleventh Amendment, the sole question before the Court is whether Plaintiffs are properly traveling under the *Ex parte Young* exemption. They unquestionably are.

### 1. Plaintiffs Properly Seek Prospective Relief for Ongoing Constitutional Violations.

First, it is black-letter law that state officials sued in their official capacities for violations of the federal Constitution cannot assert Eleventh Amendment immunity. "[B]ecause an unconstitutional legislative enactment is 'void,' a state official who enforces that law 'comes into conflict with the superior authority of [the] Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'" *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (quoting *Ex parte Young*, 209 U.S. 123, 159-160 (1908)).  Thus, contrary to what Defendants argue (Motion at 15), binding case law holds that "a suit challenging the constitutionality of a state official's action in enforcing state law is *not* a suit against the state." *Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022) (quoting *Ex parte Young*) (emphasis

added). "The Supreme Court…made clear that the way to bring such a suit—the only way to avoid the shield of sovereign immunity—is to bring a suit for prospective injunctive relief *against the official charged with enforcing the law*." *Id.*[2] (citing *Ex parte Young*) (emphasis added).

Here, Plaintiffs only seek injunctive relief and declarations that the Defendants' actions violate the Contracts Clause and the Takings Clause of the U.S. Constitution. ECF No. 15 at pp. 30-31. Courts of Appeal consistently hold that such claims do not implicate the Eleventh Amendment, which is the primary basis for Defendants' Motion. As the court found in *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 500-01 (5th Cir. 2001), "state immunity is no bar to enjoining a proper state official from unconstitutional acts. [The plaintiff] Lipscomb seeks not damages but a declaration that voiding the leases would violate the Contract Clause. In function, this requested relief is indistinguishable from a suit to enjoin the Secretary from declining to abide the challenged lease terms. While such a declaration will not support coercive, retrospective relief or money damages when confronted with the Eleventh Amendment, it will support injunctive relief." *Id.* at 500-01. In *Lipscomb*, the Fifth Circuit expressly rejected the same argument Defendants advance here, finding that "the *Ex parte Young* doctrine applies, and the

---

[2]This is not as Defendants argue a case where the action is nominally against individual state officers, and instead, the real, substantial party in interest is the state. *See* Motion at 15-16; *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1293 (S.D. Fla. 2008). An injunction and declaration against Defendants would be effectual because they are the ones who have authority directly or directly to enforce the applicable laws and establish the policies for the Prepaid Board at issue in this case. *See* ECF No. 15 at ¶¶ 14-21; *also Ex Parte Young*, 209 U.S. at 157 ("The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specifically created by the act itself, is not material so long as it exists."); *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir.1988) ("All that is required is that the official be responsible for the challenged action."); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002); *MCI Telecomms. Corp. v. BellSouth Telecomms. Inc*., 298 F.3d 1269, 1272 (11th Cir. 2002) (permitting an *Ex parte Young* lawsuit to proceed against individual members of the Florida Public Service Commission).

Eleventh Amendment does not deprive federal courts of jurisdiction to entertain this suit against the Secretary of State." *Id.* at 502.

Plaintiffs here seek the exact same form of relief that the Fifth Circuit endorsed in *Lipscomb*, namely a declaration that state action had impaired the plaintiff's contract (a lease agreement in the *Lipscomb* matter). The Fifth Circuit held, "[b]ecause voiding the current lease rates on the school lands substantially impairs the contract rights of the leaseholders, and the State's threatened action is not reasonable and necessary, we affirm the entry of summary judgment against the Secretary declaring that voiding the Columbus school land leases would violate the Contract Clause, a declaration that may be enforced by injunctive relief." *Id.* at 514.

Similarly, the Eleventh Circuit has consistently held that plaintiffs may bring constitutional claims against state officials seeking injunctive and declaratory relief. "Contrary to the district court's view, the *Young* doctrine is not limited to cases in which the plaintiff seeks to enjoin a state official from enforcing an unconstitutional state statute. *Young* applies where the underlying authorization upon which the named official acts is asserted to be illegal under federal law, the violation of federal law by [the] state official is ongoing, and the relief sought will end the violation." *Ezzell v. Bd. of Regents*, 838 F.2d 1569, 1571 (11th Cir. 1988) (reversing dismissal of claim on basis of Eleventh Amendment) (internal quotations omitted); *also Luckey*, 860 F.2d 1012.

Again addressing this same issue, the Eleventh Circuit noted "[t]he Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). In *Pryor*, the Eleventh Circuit also rejected the tactic Defendants employ here claiming dismissal is inexorable by attempting to recast Plaintiffs' claims as seeking something other than prospective relief. The Court rejected the artificially narrow

interpretation Defendants espouse of what constitutes an ongoing violation of federal law warranting prospective relief.  Specifically, the Court held that the "requirement [ongoing violation of federal law] does not mean that the enforcement of the allegedly unconstitutional state statute actually must be in progress against the particular plaintiffs initiating suit. Rather, we agree with the district court that the ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature, *i.e.*, designed to prevent injury that will occur in the future, and cases where relief is retrospective." *Id*. at 1338.

Here, Plaintiffs are asserting an ongoing violation, namely that Defendants' interpretation and application of their the TDF exemption, the associated amendments to their Plan Contracts, and application of Florida law violate the Contracts Clause and Takings Clause of the U.S. Constitution. They seek a declaration from this Court that Defendants' continuing conduct is unconstitutional. ECF No. 15 at ¶¶ 8, 53, 67, 82-83, 91-92 (ongoing conduct) & pp. 30-31 (relief). That is the essence of prospective relief, and under controlling precedent, the Eleventh Amendment does not serve as a defense. *See Pryor* at 1339 ("Appellees unquestionably seek prospective relief--a declaratory judgment that the partial-birth and post-viability abortion statutes are unconstitutional."). Plaintiffs also seek an injunction prohibiting Defendants from continuing their unconstitutional actions. ECF No. 15 at p. 31.  That is by definition prospective relief under binding precedent. "An injunction is necessarily prospective, and the Supreme Court has held that declaratory relief is treated the same when it exposes the defendant to no more liability than an injunction." *Attwood v. Clemons*, 818 F. App'x 863, 868 (11th Cir. 2020) (rejecting Eleventh Amendment argument by state official). *See also Curling v. Worley*, 761 F. App'x 927, 932 (11th Cir. 2019) ("Plaintiffs seek only an injunction barring the State Defendants from enforcing election

rules that allegedly violate Plaintiffs' constitutional rights. Since they allege those rules will violate their constitutional rights in the future, they have satisfied *Ex parte Young's* exception.").

### 2. Plaintiffs Are Not Improperly Seeking Monetary Relief.

Defendants do not dispute that Plaintiffs' Amended Complaint properly pleads claims for prospective injunctive and declaratory relief. Instead, they argue that this prospective relief is equivalent to a claim for monetary damages, thereby bringing the claims outside of the *Ex Parte Young* exemption. Defendants are incorrect for multiple reasons.

First, the Supreme Court has made it clear that under *Ex Parte Young*, it is permissible for a prospective injunction or declaration to have a monetary effect on a state. While this Court cited *Edelman* in its order staying discovery, the Supreme Court later clarified a financial effect on the state does not automatically defeat the *Ex Parte Young* exemption. "[W]e also pointed out that under the landmark decision in *Ex parte Young*, 209 U.S. 123 (1908), a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). This case falls within that framework, as an ancillary financial stemming from future compliance with a court order is permissible. "*Ex parte Young*, 209 U.S. 123 (1908), permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Milliken v. Bradley*, 433 U.S. 267, 289 (1977).

Plaintiffs' claims fit squarely within this precedent, as they are not seeking retroactive monetary relief, rather the only financial implications are future compliance costs, a wholly permissible outcome. "The Supreme Court has recognized that compliance with the terms of

prospective injunctive relief will often necessitate the expenditure of state funds." *Lane v. Cent. Ala. Cmty. Coll*., 772 F.3d 1349, 1351 (11th Cir. 2014) (rejecting Eleventh Amendment defense).

Indeed, courts throughout the country routinely follow the *Quern* and *Milliken* precedent in rejecting Eleventh Amendment defenses in cases involving future financial impacts on a state stemming from compliance with a prospective injunction or declaration. *See, e.g., Goldberg v. Ellett (In re Ellett)*, 254 F.3d 1135, 1144 (9th Cir. 2001) ("The Court has repeatedly observed that prospective relief awarded pursuant to *Ex Parte Young* may have a substantial ancillary effect on a State's treasury, but has nevertheless consistently held that this fact alone is insufficient to convert such actions into actions against the State for state sovereign immunity purposes") (internal citation omitted); *Luckey*, 860 F.2d 1012, 1014 ("This exception has been developed over the years to permit prospective relief against state officers in their official capacities to refrain from unconstitutional conduct even though compliance may cost the state money."); *Clark v. Cohen*, 794 F.2d 79, 84 (3d Cir. 1986) ("a federal court may order state officials to fund from the state treasury remedial measures found necessary to undo the harmful effects of past constitutional violations"); *Chester Upland Sch. Dist. v. Pennsylvania*, 861 F. Supp. 2d 492, 518 (E.D. Pa. 2012) ("This Court will not dismiss or deny Plaintiffs' or Intervenors' claims for injunctive relief merely because they may implicate state funds.").

The same result should occur here. Plaintiffs **are not seeking monetary relief for past misconduct**; they seek an injunction prohibiting Defendants from interpreting their contracts and applying the TDF-related law in a constitutionally prohibited manner in the future. Additionally, any future monetary compliance funds stemming from an injunction are **not state tax revenue**, such as funds wrongly collected in the past as was the case in *Seminole Tribe of Fla.*, whereby any tax collection declared improper or exempt, by statute automatically mandated a refund from the

state treasury (*id*. at 1244, 1246). Here, any future compliance funds would come from monies individual Purchasers such as Plaintiffs **already paid to the State** to a separate fund that Plaintiffs allege Defendants direct, control, oversee, and monitor through the Prepaid Board that operates independently and currently touts a $4 billion surplus in the fund that is attributable to Purchasers' deposits and savings from the TDF exemption. *See* ECF No. 15 at ¶¶ 7, 14-21, 58, 60.

Finally, a ruling that Plaintiffs could not seek relief under *Ex Parte Young* solely because there could be a future monetary compliance cost would grant the State a *carte blanche* right to avoid existing constitutional obligations. Precedent makes clear that a state is subject to heightened scrutiny under the Contracts Clause when it is a party to the contract at issue. "[C]omplete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake. A governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all." *United States Tr. Co. v. New Jersey*, 431 U.S. 1, 26 (1977) (finding violation of Contracts Clause).

The Court in *Lipscomb* reached the same conclusion: "However, when the State is a party to the contracts, the court cannot defer to the State because the State's self-interest as a party is implicated." *Lipscomb*, 269 F.3d at 505. This distinction is also critical, because as the Fifth Circuit noted, when as here a state is a party to the operative contract, "[p]urely financial obligations, however, do not surrender aspects of the State's sovereignty, and thus are subject to the Contract Clause." *Lipscomb*, 269 F.3d at 505.

### C.  PLAINTIFFS PLAUSIBLY ALLEGE CLAIMS FOR VIOLATIONS OF THE TAKINGS AND CONTRACT CLAUSES.

There is no basis for dismissal on statute of limitations grounds either.  A statute of limitations is an affirmative defense that is generally not ripe for determination on a motion to dismiss. *Varcamp Properties, LLC v. City of Miami Beach*, 22-CV-21371, 2022 WL 19731865, at *4 (S.D. Fla. Dec. 22, 2022).  The defense is properly decided at this juncture only if the Amended Complaint on its face clearly demonstrates Plaintiffs' claims are time-barred. *See Beach Cmty. Bank v. CBG Real Estate LLC*, 674 Fed. Appx. 932, 934 (11th Cir. 2017). It does not.

Defendants correctly point out that that a four-year statute of limitations for a Takings claim (brought under 42 USC § 1983) applies but then incorrectly argue that Plaintiffs' Takings claim accrued under state law in 2007 when the TDF law was enacted. Motion at 12; *see Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law") (emphasis in original). Defendants totally miss that Plaintiffs bring an as-applied Takings and Contract Clause challenge to Defendants' actions, not a facial Takings challenge pursuant to Chapter 2007-225, Laws of Florida, where the enactment date might be relevant.  *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978) (as-applied Contract Clause challenge); *U.S. Fidelity & Guar. Co. v. McKeithen*, 226 F.3d 412 (5th Cir. 2000) (as-applied Takings Clause challenge).

Also, Defendants show nothing in the enactment of Chapter 2007-225, Laws of Florida, that indicates Defendants would apply the TDF exemption to take away the substantive rights of Plaintiffs or impair their rights under their Plan Contracts when their Beneficiaries later attend Non-Florida State Schools. The law is indeed silent on its application to Beneficiaries attending Non-Florida State Schools; thus, the enactment date is not relevant. *See McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) ("It has long been the law of this Circuit that in § 1983 actions 'the

statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'") (quoting *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir.1987) (internal quotations omitted).

In the Eleventh Circuit, binding law holds that claims challenging unconstitutional actions accrue when the plaintiffs were actually injured by the allegedly unconstitutional actions, not when the underlying law became effective. *See Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1305 (11th Cir. 2022). "[T]he harm inflicted by the statute ... does not occur until the statute is enforced—in other words, until it is applied." *Id*. at 1304.  Binding case law holds for takings claims the accrual date is the time of the actual taking.  *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170, 2177 (2019). This case was filed on January 2, 2024.  Defendants first applied the TDF exemption to Plaintiff Darlow in 2021 taking her property rights, when her Beneficiary started attending a Non-Florida State School. ECF No. 15 at ¶ 54.  Defendants told Plaintiff Lavina that they would apply the exemption to her Beneficiary when she attends a Non-Florida State School in fall 2024. *Id.* at ¶ 55; *see McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008) (for a plaintiff seeking injunctive relief, the claim accrues when the plaintiff becomes subject to policy or procedure at issue). Thus, both Plaintiffs' claims are ongoing and well within the four-year statute of limitations.

Moreover, Defendants wholly ignore the allegations of the Amended Complaint and the elements of the Takings and Contract Clause claims at issue. Citing *Taylor v. City of Gadsden*, 767 F.3d 1124 (11th Cir. 2014) (Motion at 13), for example, Defendants claim Plaintiffs only challenge "administrative action" not legislative action as necessary for an impairment claim. In *Taylor*, the problem was that the municipality was not trying to enforce a law, just its own "resolution." *Id*. at 1132, 1136. Here, in contrast, Plaintiffs' case clearly involves applying a law,

and binding case law holds as-applied Contract Clause challenges are cognizable. *See Allied Structural Steel Co.*, 438 U.S. 234. Citing *Snyder v. Florida Prepaid College Board,* 269 So. 3d 586 (Fla. 1st DCA 2019) (Motion at 13), Defendants also contend that no impairment can exist because Plaintiffs' Plan Contracts did not include the TDF, and Plaintiffs will never have to pay it. But *Snyder* is not controlling, does not provide notice for purposes of any statute of limitations, and the Court should not rely on *Snyder* for several reasons:

First, *Snyder* is obviously not binding on this Court's construction of federal constitutional claims. *See Gallardo ex rel. Vassallo v. Dudek*, 963 F.3d 1167, 1180 (11th Cir. 2020).

Second, unlike here, *Snyder* was largely decided as a breach of contract action at the summary judgment stage based on a full record. In this district, the Court cannot construe a contract (or decide "res judicata") on a motion to dismiss. *See, e.g, Yellowpages Photos, Inc. v. Tata Consultancy Services Ltd., Inc*., No. 8:17-CV-388-T-36TGW, 2018 WL 4604375, at *3 (M.D. Fla. Aug. 17, 2018) ("res judicata to be determined at summary judgment"); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1312 (S.D. Fla. 2014) (contract interpretation not ripe on motion to dismiss); *Roofing Experts of S. Florida, Inc. v. USAA Cas. Ins. Co.*, No. 19-80653-CIV, 2019 WL 7881719, at *2 (S.D. Fla. Aug. 15, 2019) (citing *Alhassid*); *Geter v. Galardi S. Enterprises, Inc*., 43 F. Supp. 3d 1322, 1328 (S.D. Fla. 2014) (same) (citations omitted); *Larach v. Standard Chartered Bank Int'l (Americas) Ltd*., 724 F. Supp. 2d 1228, 1239 (S.D. Fla. 2010) (same).  Also, Plaintiffs' discovery requests seek to discover the purposes of the TDF statute and exemption and Defendants' and their predecessors' involvement in their enactment and subsequent enforcement and involvement of the state in the Prepaid Fund, which are fact questions Defendants want the Court to assume are answered in its favor but are not determinable on a motion to dismiss and best reserved for summary judgment or trial.

<u>Third</u>, while the *Snyder* court did address whether the 2007 legislation creating the TDF and its exemption violated the *state* Contracts Clause, this Court should not follow its interpretation in this *federal* case. Significantly the court relied upon the wrong standard in reviewing the exemption and amendments and failed to scrutinize the origin, background, purpose, and impact of the TDF law vis-à-vis substantive vested contract rights and benefits under the heightened standard addressed above in *United States Tr. Co.*, 431 U.S. at 26, and *Lipscomb*, 269 F.3d at 505; *also* p. 3 *supra* (stating the relevant elements of Plaintiffs' federal claims).

<u>Fourth</u>, the *Snyder* court did not address a Takings claim at all (which is at issue here in Count II) and refused to accept the initial proposition that the amount that should be paid under a Prepaid Plan Contract is a vested substantive right and benefit. Citing *Snyder*, Defendants acknowledge a Prepaid Plan creates a property interest but claim none exists here because the TDF was not part of Plaintiffs' Plan Contracts. Motion at 14. But this misses the whole point of the Amended Complaint stated above.  The *Snyder* court focused on contract interpretation rather than examining the TDF exemption, its genesis, and effect, and subsequent Plan Contract amendments and their impacts on pre-existing Plan Contract rights and benefits including the value of the exemption benefit Defendants admit they are denied—all of which are the foci of Plaintiffs' current claims and most critically what must be examined to determine a Takings claim and federal Contract Clause claim. *See Penn Central Transportation Co.*, 438 U.S. 104, 124; *United States Trust Co*, 431 U.S. 1, 17, 25-26, 29.

Along these lines, the *Snyder* court simply uncritically interpreted the reference in the *Snyder* plaintiffs' Plan Contract's preamble to potential changes in administrative rules and statutes, as justification for the Prepaid Board's changes the terms of its contracts whenever it decided, in any way, no matter the substance of the change.  *Snyder*, 269 So. 3d at 591-92. The

Prepaid Board under the policies of Defendants' predecessors unilaterally amended the vested substantive rights and benefits of the *Snyder* plaintiff's Plan Contract by administrative fiat, through changing its administrative rules. *Id.*; *also* ECF No. 15 at ¶¶ 5, 50, 59, 90. The *Snyder* court then summarily ruled the newly (unilaterally) amended Plan Contract that specifically exempted payment of the TDF for a Beneficiary who went to a Non-Florida State School, applied to the action. Defendants here in essence automatically assume these amendments to Plaintiffs' Plan Contracts are valid. But these amendments are in large part the bases for Plaintiffs' Takings claim that was *not* addressed at all in *Snyder*. Specifically, Plaintiffs allege Defendants' continuing decision and policy through the Prepaid Board to amend the Prepaid contracts take away vested substantive rights and benefits that pre-2006-2007 enrollees including Plaintiffs had when they attend Non-Florida State Schools; and hence an unconstitutional Taking occurred. ECF No. 15 at ¶¶ 8, 73, 90-92 & pp. 30-31.[3]

Defendants are also wrong that the state decision in *Gulf Coast Transportation, Inc. v. Hillsborough County*, 352 So. 3d 368, 377 (Fla. 2d DCA 2022) controls Plaintiffs' federal Takings case. There, the plaintiffs asserted an interest based on a regulatory scheme that was amended, not an actual contract with the state like this case. *Id. See also United States Trust Co*., 431 U.S. 1, 19 n. 16; ("Contract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid.") *Lynch v. U.S*., 292 U.S. 571 (1934); *King v. United*

---

[3] Taken to its logical conclusion, the *Snyder* court's interpretation that the Plan Contract may be substantially amended in any way for any reason from time to time based on not only legislative enactments but also administrative rule changes (including redrafting the vested rights and benefits under Plan Contracts), gives the state a road map on how to violate the Contracts or Takings Clauses with impunity. *See King*, 159 Fed.Cl. at 474 (noting the absurd consequences of allowing regulations or statutes to amend government contracts substantively in any fashion even though they refer to such laws, which can be amended). This is contrary to the pronouncement in *United States Tr. Co.* to permit impairments of state contracts only when they are necessary, reasonable, and of a character appropriate to the purpose justifying their adoption. 431 U.S. at 25-26, 29.

*States*, 159 Fed.Cl. 450 (2022); *Cienega Gardens v. U.S.,* 331 F.3d 1319 (Fed. Cir. 2003); *U.S. Fidelity & Guar. Co. v. McKeithen*, 226 F.3d 412 (5th Cir. 2000).

Plaintiffs here allege the Prepaid Board, under the auspices, policies, and monitoring of the then Prepaid Board Members and Executive Director, all agreed with Plaintiffs' interpretation of the Plan Contract with the state set forth here, when in 2007 they lobbied the Florida Legislature against imposing the TDF, because they realized it was really subterfuge to raise tuition that would have to be paid under a Purchaser's then existing Plan Contract. *See* ECF No. 15 at ¶¶ 34-43, 89-90. Their legal counsel even told them so. *Id*. at ¶¶ 31, 36-37.  The Prepaid Board also told the Legislature that if it did impose this new tuition "fee" that the Prepaid Board agreed would be covered under the Plan Contract, it should exempt contracts from being obligated pay this fee. *See* ECF Nos. 15 at ¶¶ 34-43, 89-90, 15-4 at 5-6, 15-7 at 3-6, 15-8 at 3, 15-9, 15-10 at 49:11-52:16, 15-12 at 26:25-27:9, 28:16-29:4.   The *Snyder* court though did not address any of this. The *Snyder* court instead used this exemption as a basis to find that—since the *Snyder* plaintiff's son would never have to pay the TDF if he went to a Florida State School—based on the exemption—it would be a "windfall" to him if the Prepaid Board was obligated to pay that amount to his Non-Florida State School. *Snyder,* 269 So. 3d at 593.[4]

---

[4] The Court should not be distracted by any claim by Defendants that Plaintiffs and the Class are looking for a "windfall."  Motion at 9.  This supposed windfall was only created by the exemption for and its lobbying and application by the Prepaid Board to 2006-2007 and prior Plan Contracts where Beneficiaries attend a Florida State School.  Clearly, per the Prepaid Board's and Defendants' predecessors' wishes, the law absolved the Prepaid Board from having to pay the TDF, which they knew was clearly covered as tuition under its Plan Contract that would apply to Plaintiffs.  Accordingly, this case addresses whether the creation and application of the exemption and Defendants' amendments and applications themselves by Defendants violate the Contract and Takings Clauses of the US Constitution. The *Snyder* court also called the plaintiff's interpretation "absurd" and accordingly refused to find the contract ambiguous. 269 So. 3d at 593.  However, the absurdity that the *Snyder* court relied upon was created by the Prepaid Board's and Defendants' predecessors' own actions in taking away substantive rights to have the new TDF exemption (i.e., tuition) benefit—as admitted by the Prepaid Board—paid under the

In sum, based on the allegations of the Amended Complaint, which the Court at this juncture must accept as true, there should be no dispute that if there were no exemption, Defendants' predecessors through the Prepaid Board were set to and committed to pay an amount equal to the TDF as tuition to its Plan Beneficiaries, whether attending Florida State Schools or Non-Florida State Schools. *See* ECF Nos. 15 at ¶¶ 31-43, 57, 15-5 at 9-13, 15-6, 15-7 at 3-6, 15-8 at 3, 15-9 at 2, 15-10 at 13:8-22, 14:14-21, 45:1-24, 50:20-25.  This confirms that the payment of the TDF under the Plan Contract would be and should be considered a substantive right and benefit payment and the Prepaid Board knew and knows so, yet under Defendants' policies it actively destroys this right. *Id*. at ¶ 57.  This substantive right has been and is being effectively denied because there is an exemption from payment of the TDF granted by the Legislature and the exemption continues to be and will be applied by Defendants through the Prepaid Board to Plaintiffs and Class Members via contract amendments and as a matter of Defendants' ongoing practice and policy.

The bottom line is this exemption as currently applied by Defendants takes away Plaintiffs' and Class Members' substantive rights and benefits and thus must pass constitutional scrutiny. The Fourteenth Amendment is designed to protect citizens from state government intrusions.  This intrusion is present whenever a state official wants to alter substantively the state's own contracts with those citizens.  Plaintiffs, the Class, and indeed all Purchasers of a Prepaid Plan purchased and will purchase the Plan to save for college.  The premise of the Prepaid Plan Contract was and is that the cost of college would increase year after year.  The Prepaid Board accounted for that when it priced its Plans.  The Prepaid Board by contract and elsewhere also told and tells its

---

prior Plan Contact. Ironically, the "absurd" interpretation the *Snyder* court mentioned was actually Defendants' predecessors' interpretation.

Purchasers that if your child or other Beneficiary does not want to go to a Florida State School, the Beneficiary would and will get the equivalent value when it attends a Non-Florida State School. ECF Nos. 15 at ¶¶ 1, 23-24, 27, 15-1 at 5, 15-2 at 2, 15-3 (§ 5.06), 15-13 at 9.  In 2007, as admitted by the Prepaid Board and Defendants' predecessors, the State devised a new way to essentially raise "tuition" and called it a TDF and exempted certain people from paying this *tuition* "fee." Now the Prepaid Board, under the auspices, policies, direction, and control of Defendants is using and will use the exemption that they insisted on in 2007 and subsequent contract amendments to limit the Prepaid Board's payments on behalf of Beneficiaries who attend Florida State Schools, as the reason to also exempt paying Beneficiaries who attend and will attend Non-Florida State Schools—Plaintiffs allege this is a Taking and a violation of the Contract Clause.

### D.  DEFENDANTS CANNOT INVOKE THE ROOKER-FELDMAN DOCTRINE.

Defendants close their Motion with an argument that the Rooker-Feldman doctrine applies to Plaintiffs' claims. The Court can summarily dispense with this argument. It is undisputed that Plaintiffs here were not parties to the *Snyder* case, nor did that case involve a certified class that would have included Plaintiffs. As a result, under controlling Eleventh Circuit precedent, the Rooker-Feldman doctrine cannot apply. "Rooker-Feldman does not apply when the parties to the federal case are not the same as the parties to the state case." *NLG, LLC v. Horizon Hosp. Grp., LLC (In re Hazan)*, 10 F.4th 1244, 1250 (11th Cir. 2021).

### CONCLUSION

WHEREFORE, based on the foregoing, Defendants' Motion to Dismiss should be denied.

### REQUEST FOR HEARING

Given the unique constitutional issues involved, Plaintiffs request a one-hour hearing on Defendants' Motion.

Dated: March 25, 2024

Respectfully submitted,

**ZEBERSKY PAYNE SHAW LEWENS, LLP**

**Edward H. Zebersky**
Edward H. Zebersky, Esq. (FBN:908370)
Mark S. Fistos, Esq. (FBN: 909191)
110 Southeast 6th Street, Suite 2900
Fort Lauderdale, FL 33301
Telephone: (954) 989-6333
Facismile: (954) 989-7781
ezebersky@zpllp.com
mfistos@zpllp.com
kgonzalez@zpllp.com

**HILGERS GARBEN, PLLC**
Alec Schultz, Esq. (FBN: 35022)
1221 Brickell Ave
Miami, FL 33131
Telephone: (305) 9630-8304
aschultz@hilgersgarben.com
aallen@hilgergraben.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 25, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notification to all attorneys of record.

**Edward H. Zebersky**
Edward H. Zebersky, Esq.