UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 24-60001-CIV-BLOOM/HUNT

ERICA LAVINA and ANDREA DARLOW,
individually and on behalf of all those
similarly situated,

                    Class Plaintiffs,

v.

JOHN D. ROOD, in his capacity as Chairman of the
Florida Prepaid College Board; ADRIA D.
STARKEY, in her capacity as Vice Chair of the
Florida Prepaid College Board; MARK AGUSTIN,
in his capacity as a member of the Florida Prepaid
College Board; SLATER BAYLISS, in his capacity
as a member of the Florida Prepaid College Board;
KATHRYN HEBDA, in her capacity as a member of
the Florida Prepaid College Board; RADFORD
LOVETT, in his capacity as a member of the Florida
Prepaid College Board; TROY MILLER, in his
capacity as a member of the Florida Prepaid College
Board; and KEVIN THOMPSON, in his capacity as
Executive Director of the Florida Prepaid College
Board,

                    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before this Court on a motion filed by Defendants John D. Rood,

Adria D. Starkey, Mark Agustin, Slater Bayliss, Kathryn Hebda, Radford Lovett, Troy

Miller, and Kevin Thompson, all members of the Florida Prepaid College Board

(collectively "Defendants").  ECF No. 24.  Defendants moved to dismiss with prejudice

Plaintiffs' Amended Class Action Complaint, ECF No. 15, pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 24.  The Honorable Beth Bloom referred this Motion to the Undersigned United States Magistrate Judge for a report and recommendation.  ECF No. 45; *see also* 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1.  Upon thorough and careful review of the Motion, Response, and Reply, the applicable law, oral argument from counsel at an October 23, 2024, hearing, and being otherwise full advised in the premises, the undersigned recommends DENYING the Motion.

## I.   BACKGROUND

Plaintiffs represent a class consisting of parents, grandparents, and guardians who have bought a Florida Prepaid College Plan ("Prepaid Plan") from the Florida Prepaid College Board ("Prepaid Board") during the enrollment period from 2006 to 2007.  ECF No. 15 at 2.  Plaintiffs bought tuition plans to cover the costs of an undergraduate degree. *Id.*  Now, Plaintiffs seek declaratory and injunctive relief against Defendants based on a claim of unconstitutional impairment of the Contract Clause and a claim of violation of the Takings Clause.  ECF No 15.  Plaintiffs specifically seek a declaration that Defendants' "continuing interpretation and application . . . of the Tuition Differential Fee ("TDF") exemption and the TDF definition . . . are violations" of the Contract and Takings Clauses of the United States Constitution.  Plaintiffs also seek to enjoin Defendants "from applying the TDF exemption" as added in 2007 and enjoin Defendants from applying their unilaterally-made "changes to the Plan Contracts" purchased by Plaintiffs whose children chose to "attend Non-Florida State Schools." *Id.*  Defendants move to dismiss these claims.  ECF No. 24.

The Florida Prepaid Program is a Florida state entity designed as a planning and savings program "through which many of the costs associated with postsecondary

attendance may be paid in advance and fixed at a guaranteed level for the duration of undergraduate enrollment" in Florida state schools.  § 1009.97(2), Fla. Stat. (2022).  The Florida Legislature authorized Florida Prepaid to offer "advance payment contracts," also known as "Prepaid College Plans," for certain statutorily designated fees charged by Florida colleges and universities. § 1009.98(2), Fla. Stat. (2022).  The Prepaid College Plans were advertised as covering the actual cost of in-state schools or, if the beneficiary chose, "the value of the plans [would] be transferred to most private colleges in Florida and most out-of-state colleges."  College Bound, August 2006; *see* ECF No. 15, Exh. B.

While the Florida Prepaid program covers many of the costs associated with postsecondary school attendance, it does not cover all costs.  In addition to providing for tuition, the Florida Legislature designated four types of in-state university fees that the Prepaid Plan would cover:

1. Registration fees, intended to cover the "tuition fee, financial aid fee, building fee, and Capital Improvement Trust Fund fee."  *See* § 1009.97(3)(g), § 1009.24(4)–(8), Fla. Stat. (2022).

2. Housing fees for a maximum of ten semesters during full-time enrollment.  *See* § 1009.98(2)(d)1., Fla. Stat. (2022).

3. Local Fee Plan which covers a variety of miscellaneous fees, such as student activity and service fees.  *See* § 1009.98(2)(b)2., § 1009.24(9)–(24), Fla. Stat. (2022).

4. Tuition Differential Fee ("TDF"), a "supplemental fee."  *See* §1009.01(3), Fla. Stat. (2022).

The Florida Legislature provided for both the registration and housing fees in the original creation of the Prepaid Program in 1987.  The Local Fee Plan was created in 1998, and the TDF Plan was most recently authorized in 2007.  Plaintiffs' claims focus on the TDF.  ECF No. 15.

The original enactment in 2007 designated the TDF's supplemental fee as "for instruction provided by a public university in this state."  The current iteration of the statute defines the TDF as a "supplemental fee charged to a student by a public university in this state."  As further explained by § 1009.24(16), the TDF is used to "promote improvements in the quality of undergraduate education and shall provide financial aid to undergraduate students who exhibit financial need."  § 1009.01(3), Fla. Stat. (2022).

Purchasers who entered into a plan contract before July 1, 2007, when the Legislature added TDF coverage, are legislatively exempt from having to pay a TDF.  *See* §1009.24(6)(b)5., Fla. Stat. (2022).  Contract plans sold after 2007 incorporated the TDF.

Plaintiffs point to the legislative history surrounding the addition of the TDF to allege that the TDF is tuition by another name, used to raise in-state tuition without looking like tuition fees are increasing.  In particular, Plaintiffs emphasize statements such as the House of Representatives' staff analysis for a bill that enacted the TDF, which stated that "[b]ecause the University of Florida has indicated that fee revenues will be used, in part, to hire additional faculty to provide instruction, the fee could be considered a form of 'tuition' even though it is called a 'fee.' If the new 'fee' is determined to be a part of tuition, [the Prepaid Board] could be required to pay the amount on behalf of its contract holders." *See* ECF No. 15, Exh. F.   The Prepaid Board has denied the TDF is tuition and cited to concerns that payment for the TDF into the future will deplete its financial reserves.

4

Plaintiffs purchased Tuition Plans and Local Fee Plans for their children; neither plan provides payment for the TDF.  ECF No. 15.  Both Plaintiffs' Beneficiaries are exempt from paying the TDF because the plans were purchased prior to 2007.  *Id.*  They purportedly entered into these plans to "lock in" tuition rates by paying into the Prepaid fund, which is separate from the state treasury and which has a $4 billion surplus.  ECF No. 30.  Plaintiffs allege the Prepaid Board under the direction of its board members and director unilaterally amended Plaintiffs' contracts to incorporate the TDF exemption to avoid having to pay the TDF as part of tuition under the Plan Contract.  *Id.*  Plaintiffs believe this change as applied takes away their vested substantive rights and benefits because the basis for the TDF was political subterfuge to raise tuition.  *Id.*  Plaintiffs claim the creation of the TDF substantially changes the Prepaid Plan to the extent that it deprives Plaintiffs of their contractually agreed-to benefits.  ECF No. 15, 30.  This, in Plaintiffs' opinion, violates the Contract Clause and Takings Clause of the U.S. Constitution.  *Id.*

On behalf of the class of purchasers, Plaintiffs brought two causes of action against the Florida Prepaid College Program and the Florida Prepaid College Board's individual directors.  After dropping the suit against the Prepaid Program/agency itself, Plaintiffs have continued to pursue the lawsuit against the board members in their official capacities, seeking declaratory and injunctive relief.

Defendants contend Plaintiffs' claims for declaratory and injunctive relief should be dismissed because they are demanding payment for a cost neither they nor Florida Prepaid would ever be required to pay due to Plaintiffs' plans' Beneficiaries' exemption from having to pay the TDF had they chosen to attend an in-state university.  ECF No.

24.   Defendants also point to a recent decision from Florida's First District Court of Appeals in which that court determined that "[p]ursuant to the plain language of the contract, the value of the TDF is not transferable to an out-of-state institution and [the plaintiff's] prepaid plan does not include the value of the TDF."  *Snyder v. Fla. Prepaid Coll. Bd.*, 269 So. 3d 586, 592–93 (Fla. 1st DCA 2019).  Defendants concede Plaintiffs are entitled to the benefits they contracted for—payment of tuition and local fees—but deny Plaintiffs could ever be entitled to a benefit Florida Prepaid does not legally have to pay, such as the TDF.  ECF No. 24.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "To meet this 'plausibility standard,' a plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Arias v. Integon Nat'l Ins. Co.*, No. 18-22508-CIV-ALTONAGA/GOODMAN, 2018 WL 4407624, at *2–3 (S.D. Fla. Sept. 17, 2018) (quoting *Iqbal*, 556 U.S. at 678). "A complaint may be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Reilly v. Herrera*, 622 F. App'x 832, 833 (11th Cir. 2015).

"On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true."  *Id.* (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)).   "Unsupported

allegations and conclusions of law, however, will not benefit from this favorable reading." *Id.* (citing *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

Defendants assert multiple defenses or reasons to dismiss Plaintiffs' suit.   ECF No. 24.  For purposes of considering a Motion to Dismiss, the Court accepts the factual allegations in the First Amended Complaint as true and views them in the light most favorable to Plaintiff. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019).

### 1.  Immunity to Suit

Defendants first raise a jurisdictional bar under Rule 12(b)(1), asserting immunity under the Eleventh Amendment.  Florida has not consented to the suit or waived its immunity.  Although Plaintiffs are suing the Prepaid Board, Defendants claim that because Plaintiffs initially also filed suit against Florida Prepaid, a state agency, but later dropped it as a party, Plaintiffs are really suing the state and attempting to rely on the *Ex parte Young*[1] doctrine, an exception to immunity under the Eleventh Amendment. Defendants believe Plaintiffs cannot be successful in their use of that doctrine because Plaintiffs fall into an exemption that prevents the application of the *Ex parte Young* exception: Plaintiffs' sought prospective relief is the payment of money or the specific performance of a contract.

Plaintiffs assert they are properly traveling under the *Ex parte Young* exception. Plaintiffs further argue they are not bringing a suit against the state because Plaintiffs are

---

[1] *Ex parte Young*, 209 U.S. 123, 159–160 (1908).

challenging the constitutionality of the board members' actions in enforcing a state law they believe to be unconstitutional.  Pursuant to the Supreme Court's findings in *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011), Plaintiffs suggest state officials sued in their official capacities for violations of the federal Constitution cannot assert Eleventh Amendment immunity because "an unconstitutional legislative enactment is 'void'" and the state official who enforces an unconstitutional law is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct."  *Id.* (quoting *Ex parte Young*, 209 U.S. at 159–160).  Against Defendants' allegation they are seeking monetary relief, Plaintiffs maintain that because they are asking for a declaration that a state action has impaired their contracts, they are not seeking damages or retrospective payments.

### a. Protections under the Eleventh Amendment

Under the Eleventh Amendment, sovereign immunity bars claims against defendants acting in their official capacities.  U.S. Const. amend. XI.  The Eleventh Amendment bars "suits against a state initiated by that state's own citizens."  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).  This immunity extends to state agencies and other arms of the state.  *Cassady v. Hall*, 892 F.3d 1150, 1153 (11th Cir. 2018).  The Eleventh Amendment similarly "prohibits suits against state officials where the state is, in fact, the real party in interest."  *Summit Med. Assocs.*, 180 F.3d at 1336.

When a plaintiff sues an individual in their official capacity, "the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself."  *Lewis v. Clarke*, 581 U.S. 155, 162 (2017).  On the other hand, personal-

capacity suits "seek to impose *individual* liability upon a government officer for actions taken under color of state law." *Id.* (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Consequently, the real party in interest is the individual, not the sovereign. *Id.* at 163. When evaluating who the real party in interest is, "courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Lewis*, 581 U.S. at 162.

### b. *Ex parte Young*

When a plaintiff brings a suit seeking "prospective equitable relief to end ongoing and continuing violations of federal law," there is an exception to Eleventh Amendment sovereign immunity: the *Ex parte Young* doctrine. *Summit Med. Assocs.*, 180 F.3d at 1336. *Ex parte Young* also provides that "a suit challenging the constitutionality of a state official's action in enforcing state law is *not* a suit against the state." *Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022) (quoting *Ex parte Young*, 209 U.S. at 159–160).

At its foundation, the *Ex parte Young* doctrine is the "link between state sovereign immunity and the vindication of federal rights." *In re Levin*, 384 B.R. 308, 313–14 (S.D. Fla. 2002) (emphasis added) (quoting *In re Richmond Health Care, Inc.*, 243 B.R. 899, 907 (S.D. Fla. 2000)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

### c.  Exceptions to *Ex Parte Young*

Both Parties rely on *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011), to explain the application of and exceptions to the *Ex parte Young* doctrine.  "The specific indignity against which sovereign immunity protects is the insult to a State of being haled into court without its consent.  That effectively occurs . . . when (for example) the object of the suit against a state officer is to reach funds in the state treasury . . . ."  *Id.* at 258–59.  "'Prospective' relief will not overcome the sovereign immunity of a state when that relief is an award of money damages camouflaged as an injunction or a declaratory judgment."  *Seminole Tribe of Fla. v. Fla. Dept. of Revenue*, 750 F.3d 1238, 1244–45 (11th Cir. 2014)).

The "general criterion for determining when a suit is in fact against the sovereign is the effect of the relief sought," and so, "*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury . . . or an order for specific performance of a State's contract."  *Stewart*, 563 U.S. at 256–57 (internal citations omitted).  But "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury."  *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  *Quern* also provides a helpful query for consideration: does the declaration "constitute permissible prospective relief or a 'retroactive award which requires the payment of funds from the state treasury'?"  *Id.* at 346–47.  A suit may be proper "to the extent it sought 'payment of state funds . . . as a necessary consequence of compliance in the future with a substantive federal-question determination . . . .'"  *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (quoting *Edelman v.*

*Jordan*, 415 U.S. 651, 668 (1974)).  An example of an acceptable declaration gives class members "no more . . . than what they would have gathered by sitting in the courtroom" and "simply informs class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue." *Quern*, 440 U.S. 332 at 349.

It is clear Florida has not waived its right to immunity.  But here Plaintiffs seek their relief against the board members and executive director for the way in which they have applied a law Plaintiffs allege unconstitutionally violates their rights.    The undersigned finds Plaintiffs' claims affirmatively answer the two inquiries needed to determine whether the application of *Ex parte Young* avoids the Eleventh Amendment immunity bar to suit: Plaintiffs are alleging ongoing violation of federal law and they are seeking prospective relief.  *See Verizon Maryland*, 535 U.S. at 645.  These are threshold matters that do not require an in-depth analysis of the claims; and at this motion to dismiss stage, Plaintiffs' allegations should be viewed in a light most favorable to those claims.

Despite Defendants' arguments that Plaintiffs' claims fall into an exception to the *Ex parte Young* doctrine, Plaintiffs' sought relief—declaratory and injunctive—is prospective in nature and does not seek money damages.  Defendants' view of the argument on this point is narrow.  At the motion-to-dismiss stage, the question regarding the *Ex parte Young* exception to immunity to suit is not whether the statute is actually unconstitutional or even whether unconstitutional enforcement is in progress.  Instead, the question is whether the relief Plaintiffs want is prospective in nature and capable of preventing injury in the future.

Plaintiffs want declaratory and injunctive action to prevent the Prepaid Board members from applying the TDF exemption as it is currently doing.  Although this has monetary ramifications, it is not, on the face of the complaint, a retroactive award, a payment of funds, or camouflaged money damages.  Instead, Plaintiffs want compliance with future monetary obligations, which courts have found to be acceptable.  *See Quern*, 440 U.S. at 337; *Milliken*, 433 U.S. at 289. Asking for money back or for receipt of the difference in value for tuition already paid is not the same as asking for a change in how money in the future is allocated and distributed.  *See Quern*, 440 U.S. at 337.  Plaintiff appears to be asking for the latter.

If Plaintiffs ultimately succeed, a declaration making the requested changes to the Prepaid Plans would certainly have future financial consequences.   But Plaintiffs' requested declaration is otherwise simply a statement and does not provide damages or other monetary relief.  Therefore, the money damages exception does not appear to bar Plaintiffs from moving forward under the *Ex parte Young* doctrine.  The undersigned recommends denying the motion to dismiss on this ground.

### 2.  Statute of Limitations

Defendants also assert Plaintiffs have brought their claim outside of any applicable statute of limitations because the TDF was first created by the Florida legislature in 2007 and that is the year from which the statute of limitations begins to run.  Plaintiffs maintain that because they are bringing an as-applied challenge under the Contract and Takings Clauses, rather than a facial challenge, their claims are not tied to any enactment date, allowing Plaintiffs to bring the claims now.

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Am. Marine Tech, Inc. v. World Group Yachting, Inc.*, 418 F. Supp. 3d 1075, 1080 (S.D. Fla. 2019) (quoting *Keira v. U.S. Postal Inspection Serv.*, 157 Fed. Appx. 135, 136 (11th Cir. 2005)).  "Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss. . . . However, if facts on the face of the pleadings show that the statute of limitations bars the action, the defense can be raised by motion to dismiss."  *Am. Marine Tech*, 418 F. Supp. 3d at 1080 (quoting *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012)).

"Although the statute of limitations is determined by state law, the accrual of a claim pursuant to § 1983 is determined by federal law."  *Yohanan v. City of Fort Lauderdale*, No. 15-60731-CIV-COHN/SELTZER, 2016 WL 5001230, at *3 (S.D. Fla. Jan. 15, 2016) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).  "A civil rights claim accrues, and thus the statute of limitations begins to run, when 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Yohanan*, 2016 WL 5001230, at *3 (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)).

A facial challenge is a purely legal claim that is always ripe for judicial review because it does not require a developed factual record. An as-applied challenge addresses whether "a statute is unconstitutional on the facts of a particular case or to a particular party." Black's Law Dictionary at 223.  "Because such a challenge asserts that a statute cannot be constitutionally applied in particular circumstances, it necessarily

requires the development of a factual record for the court to consider." *Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F. Supp. 3d 1177, 1202 (S.D. Fla. 2020).

Although Defendants correctly note that Plaintiffs' claim against the TDF could not be possible until after the statute was enacted in 2007, Plaintiffs also accurately point out that they are raising "as-applied" issues with how the TDF impacts their contracts. Plaintiffs' situation is comparable to cases in which courts compare one-time violations with continuing violations. If a defendant's actions violate a plaintiff's rights on a repeated or ongoing basis, then a cause of action may be timely even if the first violation took place outside the statute of limitations. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448–49 (11th Cir. 1993) (finding wage discrimination to be a continuing violation). The same could be said here. If Plaintiffs' claims bear out, the violations to their constitutional rights will have occurred on a routine basis, coinciding with tuition payments for their beneficiaries. It does not appear on the face of Plaintiffs' pleadings that the statute of limitations would bar the action, and therefore Defendants' Motion should be denied on this point.

### 3. Failure to State a Cause of Action

Rule 12(b)(6) allows a defendant to raise a defense based on "failure to state a claim upon which relief can be granted," but tests the merits of the claim based only on whether plaintiff properly stated the claim. *See* Fed.R.Civ.P. 12(b)(6). A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### a. *Rooker-Feldman* Doctrine

As a threshold issue, Defendants point to a Florida First District Court of Appeals case, *Snyder v. Florida Prepaid College Board*, 269 So. 3d 586, 595 (Fla. 1st DCA 2019). The *Snyder* court ruled on a breach of contract case that decided state contract claims and found that the value of the TDF is not transferrable to an out-of-state school. Defendants believe the decision in this case is definitive and precludes Plaintiffs from raising their claims in federal court. Plaintiffs note that a state decision is not binding on federal courts and the state court made a determination on similar but not identical claims. Plaintiffs point specifically to their Takings Clause claim and the fact that they were not a party to the state proceedings.

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to adjudicate the validity of a state court order." *Thurman v. Jud. Correction Servs., Inc.*, 760 F. App'x 733, 736 (11th Cir. 2019). The *Rooker-Feldman* doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In such cases, the district court lacks subject matter jurisdiction because 28 U.S.C. § 1257 vests authority to review a state court's judgment solely with the Supreme Court. *Id.* at 291–92.

> The Eleventh Circuit set forth a four-factor test to guide the application of the *Rooker–Feldman* doctrine, finding that it bars federal court jurisdiction where:
>
> (1) the party in federal court is the same as the party in state court, *see Roe v. Alabama*, 43 F.3d 574, 580 (11th Cir. 1995); (2) the prior state court ruling was a final or conclusive judgment on the merits, *see David Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1332

(11th Cir. 2000); (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding, *see Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997) (per curiam); and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment, *see Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001).

*Nicholson v. Shafe*, 558 F.3d 1266, 1272 (11th Cir. 2009).

*Rooker-Feldman* does not strip a district court of subject matter jurisdiction over a claim "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. But, *Rooker-Feldman* does not prioritize form over substance and bars all appeals of state court judgments, brought in federal district court, regardless of how a plaintiff labels his complaint. *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021); *see also May v. Morgan Cnty. Georgia*, 878 F.3d 1001, 1005 (11th Cir. 2017) ("[A] state court loser cannot avoid *Rooker-Feldman's* bar by cleverly cloaking her pleadings in the cloth of a different claim.").

The Eleventh Circuit has warned that the *Rooker-Feldman* doctrine is limited, clearly narrow, and "will almost never apply." *Behr*, 8 F.4th at 1211–12. Given this guidance, the undersigned does not believe it should apply here. While the Florida First District Court of Appeals made findings on similar matters, the parties and constitutional issues are not identical, and some issues, such as Plaintiffs' challenge under the Takings Clause, were not addressed at all. Defendants' Motion should therefore be denied on this point.

### b. Impairment of a Contract and Contract and Takings Clause Violations

Defendants next argue Plaintiffs are challenging an administrative action rather than legislation, and therefore, have failed to state a claim under the Contract Clause

because the law would ultimately remain in effect.  Defendants cite to *Taylor v. City of Gadsden*, 767 F.3d 1124 (2014) (finding "no basis upon which to launch a Contract Clause challenge" where the plaintiff did not challenge the law that caused the alleged harm), to support their argument that a challenge to an administrative action, rather than one specifically aimed at legislation, cannot sustain a claim under the Contract Clause. That case, however, as Plaintiffs correctly note, involved a municipality, and there was no legislatively enacted law to challenge.   The undersigned agrees with Plaintiffs that *Taylor* is distinguishable and does not bar the present claim.

Defendants also maintain Plaintiffs never had a contractual right to the value of the TDF and therefore cannot assert one now.  And, noting that the Florida legislature previously determined there are no private property interests within the TDF, Defendants believe Plaintiffs' Takings Clause claim is similarly flawed.  While Florida recognizes an independent property interest in the Prepaid Plan, it does not recognize a property interest in the TDF.  Without a right to the value of the TDF and without a property interest in the TDF, Defendants believe both the Contract and Takings Clause claims should be dismissed.   In turn, Plaintiffs focus on the substantial change to their Prepaid Plans caused by the creation of the TDF.   With a right to the property interest of their investment in the Prepaid Plans, Plaintiffs believe the TDF-related change, made unilaterally by the Prepaid Board, has caused a deprivation of the benefits and interests they agreed to and contracted for.

### i.  Survival on a Motion to Dismiss

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Grant v. Wachovia Mortg., FSB*, No. 09-60520-CIV-COHN, 2009 WL 1457038, at *1 (S.D. Fla. May 22, 2009) (quoting *Twombly*, 550 U.S. at 555). Instead, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008). In evaluating whether Plaintiffs are entitled to relief, this Court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in Plaintiffs' favor. *Twombly*, 550 U.S. at 555.

Plaintiffs' claims under the U.S. Constitution are premised on 42 U.S.C. § 1983, which "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394, (1989). To withstand dismissal for failure to state a claim under § 1983, a complaint must allege:

> (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that such conduct deprived the plaintiff of his rights, privileges, or immunities secured by the Constitution or laws of the United States. The second prong of the inquiry is in turn two-folded: (1) there must be an actual deprivation of a federally protected right, and (2) the conduct complained of must have been causally connected to the deprivation.

*Joubert-Vazquez v. Alvarez-Rubio*, 820 F. Supp. 2d 289, 295 (D.P.R. 2011).

Plaintiffs' claim meets the elements to survive a motion to dismiss and plausibly meets the elements required to show claims under the Contract Clause and the Takings Clause. In this situation, and at this stage of the suit, Plaintiffs should be allowed to survive Defendants' motion to dismiss for failure to state a claim. It is clear the conduct Plaintiffs complain of was committed by the Florida Prepaid Board members acting

pursuant to the legislative enactment of the TDF. And that conduct, when taking all Plaintiffs' allegations as true, arguably deprived Plaintiffs of their rights under the Contract and Takings Clauses because it impaired their right to contract and impaired their property rights.

### ii. Contract Clause

"It long has been established that the Contract Clause limits the power of the States to modify their own contracts as well as to regulate those between private parties. Yet the Contract Clause does not prohibit the States from repealing or amending statutes generally, or from enacting legislation with retroactive effects." *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 17 (1977) (citing *Fletcher v. Peck*, 3 L.Ed. 162 (1810); *Dartmouth College v. Woodward*, 4 L.Ed. 629 (1819)).

As outlined by Plaintiffs, a federal Contract Clause claim has three elements: (1) whether the law substantially impairs a contractual relationship; (2) whether there is a significant and legitimate public purpose for the law; and (3) whether the adjustments of rights and responsibilities of the contracting parties are based upon reasonable conditions and are of an appropriate nature. *New Jersey*, 431 U.S. at 17, 25–26, 29.

### iii. Takings Clause

"The Takings Clause of the Fifth Amendment, applied to the States through the Fourteenth Amendment, provides that private property shall not be taken for public use, without just compensation." *PBT Real Estate, LLC v. Town of Palm Beach*, No. 17-81254-CIV-MIDDLEBROOKS, 2018 WL 8787787, at *2 (S.D. Fla. Feb. 22, 2018) (citing U.S. Const. amend. V; *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017)). Despite this basic premise, "the question of what constitutes a taking [remains] a problem of considerable

complexity." *Goodwin v. Walton Cnty. Florida*, 248 F. Supp. 3d 1257, 1262 (N.D. Fla. 2017). "There are several types of takings claims, with differing standards." *Id.* "[T]his Court, quite simply, has been unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

But generally, "where a regulation interferes with private property, a court engages in . . . the multi-factor balancing test in *Penn Central* to determine whether a regulatory taking has occurred." *Goodwin*, 248 F. Supp. 3d at 1262. When contemplating a claim involving the Takings Clause, a court should consider, "[t]he economic impact of the regulation" in context of how "the regulation has interfered with distinct investment-back expectations" and, whether harm caused by "the challenged government action . . . interfere[d] with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute 'property.'" *Penn Central*, 438 U.S. at 124–25.

"Property interests, for the purposes of a takings claim, are not created by the Constitution, rather they are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law." *Checker Cab Operators, Inc. v. Miami-Dade County*, 899 F. 3d 908, 917 (11th Cir. 2018); *see also Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998) (the "existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law") (internal quotation marks omitted).

Plaintiffs' claim under the Contract and Takings Clauses appears reasonable given the contractual relationship between the purchasers and the Prepaid Program. Plaintiffs

believed their investments would "lock in" tuition costs regardless of whether the beneficiary attended an in-state or out-of-state university.    At this stage in the proceedings, Plaintiffs do not have to prove any of the elements of a Contract Clause claim or a Takings Clause claim to survive the motion to dismiss.    Instead, the facts Plaintiffs provided only must have enough "heft" to plausibly pose the need for relief.

Under the first element of a Contract Clause claim, the change unilaterally made by the Prepaid Program Board impaired or at least altered the contractual relationship. Under the second, the TDF and the changes made to Plaintiffs' contracts may have a legitimate public purpose, such as providing more funds for universities.  Later exploration into Plaintiffs' Contract Clause claim should ultimately reveal whether "the impairment is nevertheless justified as reasonable and necessary to serve an important public purpose." *Joubert-Vazquez*, 820 F. Supp. 2d at 297.  However, "the existence of an important public interest is not always sufficient to overcome [the] limitation" the Contract Clause exercises over state legislative authority.   *New Jersey*, 431 U.S. at 21.  At this motion to dismiss stage, Plaintiffs have plausibly shown enough factual references to the legislative history regarding the creation of the TDF to allow them to continue to pursue this element at a later stage of the suit.  And the same exploration should inform a determination on the third element of whether the adjustments Defendants made to Plaintiffs' contracts were reasonable and appropriate.

As to elements to support a claim under the Takings Clause, Plaintiffs contend their investments into the Prepaid Plan have been negatively impacted by the creation of the TDF and the changes its implementation and exemption made on their plans.  It is perhaps plausible for Plaintiffs to feel that their investments into the Prepaid Program,

which currently boasts a significant surplus, have been taken for public use when the Plan pays out less than Plaintiffs feel their children-beneficiaries are entitled to receive for tuition purposes.

A unilateral change made to a contract by the Prepaid Program's Board may ultimately be found to have deprived Plaintiffs of a property interest, as Plaintiffs insist in their complaint.  Or Plaintiffs may in the end show the TDF is a tuition-like fee that Plaintiffs contracted for and that out-of-state students have been prevented from recovering. Plaintiffs point to lobbying speeches made during the enactment discussions in 2007 to show that, at one point, even the Prepaid Board believed the TDF was tuition that purchasers would be entitled to under the then-existing contract plan.

Plaintiffs may not ultimately prevail on their claims, but their arguments are at least plausible.  Given the nature of review at this stage, Plaintiffs should not be prevented from moving forward at this stage of the proceedings.   Therefore, the undersigned recommends denying the motion to dismiss on these grounds.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned recommends Defendants' Motion to Dismiss, ECF No. 24, be DENIED.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on

unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3–1 (2018); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE AND SUBMITTED at Fort Lauderdale, Florida this 31st day of December 2024.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Beth Bloom
All Counsel of Record