UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-60001-BLOOM/Hunt

ERICA LAVINA,
ANDREA DARLOW, *et al.*,

    Plaintiffs,

v.

FLORIDA PREPAID COLLEGE BOARD,
*et al.*,

    Defendants.

_____/

**ORDER ON REPORT AND RECOMMENDATION**

    **THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss ("Motion"), ECF No. [24], filed by Defendants John Rood, Adria D. Starkey, Mark Agustin, Slater Bayliss, Kathy Hebda, Radford Lovett, Troy Miller, and Kevin Thompson, in their capacities as members of the Florida Prepaid College Board. Plaintiffs Erica Lavina and Andrea Darlow filed a Response in Opposition, ("Response"), ECF No. [30], to which Defendants filed a Reply, ECF No. [31]. The Motion was referred to United State Magistrate Judge Patrick M. Hunt for a Report and Recommendation ("R&R"), ECF No. [45].

    On December 31, 2024, Judge Hunt issued an R&R, ECF No. [55], recommending that the Motion be denied. Defendants filed their Objections to the R&R, ECF No. [56], to which Plaintiffs filed a Response to the Objections, ECF No. [57]. The Court has conducted a *de novo* review of the R&R and the Objections in accordance with 28 U.S.C. § 636(b)(1)(C). *See Williams v. McNeil*, 577 F.3d 1287, 1291 (11th Cir. 2009). The Court has considered the Motion, the R&R, the Objections, the Response to the Objections, the record in this case, the applicable law, and is

otherwise fully advised. After conducting a *de novo* review of the objected-to portions of the R&R, the Court rejects the R&R, and grants Defendants' Motion to Dismiss.

I. **BACKGROUND**

    A. **Florida Prepaid College Program**

The Florida Legislature created the Florida Prepaid College Program "to provide a medium through which the cost of registration and dormitory residence may be paid in advance of enrollment in a state postsecondary institution at a rate lower than the projected corresponding cost at the time of actual enrollment." Fla. Stat. § 1009.98(1). The Florida Prepaid College Board ("Board") is a "body corporate" created pursuant to Florida Statute § 1009.971. The Board "administer[s] the prepaid program . . . [and] perform[s] essential government functions as provided in ss. 1009.97-1009.988. . . . [and it] independently exercise[s] the powers and duties specified in ss. 1009.97-1009.988." Fla. Stat. § 1009.971(1).

The Legislature authorizes the Board to offer Advance Payment Contracts ("Plan Contracts") to purchasers of Prepaid Plans ("Plans"). *See* Fla. Stat. § 1009.97(3)(a) (defining "'advance payment contract' [to mean] a contract entered into by the board and a purchaser pursuant to s. 1009.98"). Through the Plan relevant here, "the [Plan Contract] may provide prepaid registration fees for a specified number of undergraduate semester credit hours not to exceed the average number of hours required for the conference of a baccalaureate degree." Fla. Stat. § 1009.98(2)(b)1.; *see also* ECF No. [15-3] at 4 ("The purchaser prepays 120 semester credit hours of tuition at a state university through the purchase of a four-year university tuition plan."). Registration fees mean "tuition fee, financial aid fee, building fee, and Capital Improvement Trust Fund fee." Fla. Stat. § 1009.97(3)(g). The Legislature defines tuition as "the basic fee charged to a student for instruction provided by a public postsecondary educational institution in this state. A

charge for any other purpose shall not be included within this fee." Fla. Stat. § 1009.01(1). The Board may also provide Plan Contracts for additional fees delineated in § 1009.24.

### B. The Tuition Differential Fee

In 2007, the Florida Legislature amended Florida Statutes §§ 1009.01, 1009.24, and 1009.98. *See* Ch. 2007-225, Laws of Fla. The amendment to § 1009.01 authorized state universities to charge a new fee – the Tuition Differential Fee ("TDF"). Ch. 2007-225 § 1, Laws of Fla. The TDF was not included as part of the definition for tuition but was separately defined as "the supplemental fee charged to a student by a public university in this state[.]" Fla. Stat. § 1009.01(3). The amendment to § 1009.24 exempted Plan Contracts that were purchased before July 1, 2007 from paying the TDF. *See* Ch. 2007-225 § 2, Laws of Fla.; Fla. Stat. § 1009.24(15)(c). Further, the Legislature amended § 1009.98 so that "the board may provide advance payment contracts for the tuition differential authorized in s. 1009.24(15) for a specified number of undergraduate semester credit hours . . . in conjunction with advance payment contracts for registration fees." Ch. 2007-225 § 3, Laws of Fla.; Fla. Stat. § 1009.98(b)(2)3.

### C. Plaintiffs' Complaint

In their Amended Class Action Complaint, ECF No. [15], Plaintiffs allege that they are individuals on behalf of a proposed class of members who entered into Plan Contracts with the Board during or prior to the 2006-07 enrollment period. ECF No. [15] at ¶ 69. The benefits of Plaintiffs' Plan Contracts significantly decreased after the creation of the TDF, which Plaintiffs are exempt from paying and from which they receive the benefit. ECF No. [15] at ¶ 2. In 2004, Plaintiff Andrea Darlow purchased a Plan for her daughter. *Id.* at ¶ 54. In 2021, her daughter attended Elon University, a non-Florida state school. *Id.* The Plan paid Elon University $2,619.70 for 17 credit hours instead of $3,616.07, the equivalent cost for attending a state school ($212.71/credit hour). *Id.* In 2006, Plaintiff Erica Lavina purchased a Plan for her daughter who

intends to attend Ursinus University – a non-Florida state school – starting in the Fall of 2024. *Id.* at ¶ 55. Lavina was advised by the Board that her Plan will only make an approximate payment to Ursinus totaling $155.00 per credit hour as opposed to the anticipated cost of $212.71 per credit hour to enroll at a Florida state school. *Id.*

Plaintiffs allege that much of the difference between the two amounts is related to the Board's refusal to transfer and apply the TDF benefit to beneficiaries who attend non-Florida schools. *Id.* at ¶ 25. Plaintiffs allege that "[r]ather than pay the amount of the TDF to persons who used the Plan to pay for a Non-Florida State School, the Prepaid Board under the direction, control, and policies of Board Members and the Board [Executive Director] utilized its rulemaking authority to substantively change the benefit terms of the Plan Contract to specifically provide that 'tuition' did not include the TDF." *Id.* at ¶ 49.

Plaintiffs' Plan Contracts address transfer and payment to a non-Florida state school as follows:

> The contract may be applied to a regionally-accredited, not-for-profit, degree-granting, out-of-state community college, college or university. The Board will transfer an amount not to exceed the current rates at state universities and community colleges in Florida. The purchaser must provide written authorization to the Board to allow the transfer of benefits to a qualified out-of-state college or university.

ECF No. [15-3] at 5; *see also* Fla. Stat. § 1009.98(3).

Plaintiffs' Plan Contracts state that "[t]he applicable provisions of part IV, Chapter 1009, Florida Statutes, rules contained in Chapter 19B Florida Administrative Code, and s. 529 of the Internal Revenue Code, as amended from time to time, shall apply to the contract and are incorporated by reference." ECF No. [15-3] at 3.

Plaintiffs' Amended Class Action Complaint asserts two causes of action against the Board. Count One asserts an Unconstitutional Impairment of the Contract Clause of the United

4

Case No. 24-cv-60001-BLOOM/Hunt

States Constitution and Count Two asserts a Violation of the Taking Clause of the United States Constitution. ECF No. [15] at 26-30. Plaintiffs seek a declaration that Defendants' continuing interpretation and application of the TDF exemption and TDF definition, and Defendants' application of the related changes made to Plaintiffs' Plan Contracts, are violations of the Contract and Takings Clause. *Id.* at 30. Further, Plaintiffs request that this Court enjoin Defendants from applying the TDF exemption and definition and applying Defendants' changes to Plaintiffs' Plan Contracts whose Plan Beneficiaries attend non-Florida state schools. *Id.* at 31.

In their Motion, Defendants argue that Plaintiffs' claims are barred by Eleventh Amendment immunity, and that even if the Court has subject matter jurisdiction, Plaintiffs' claims are barred by the statute of limitations. ECF No. [24]. Further, Defendants contend that the Amended Complaint should be dismissed for failure to state a claim. *Id.* Defendants also argue that the *Rooker-Feldman* Doctrine requires dismissal, as the First District Court of Appeal already decided the issue now before this Court. *Id.*; *see Snyder v. Fla. Prepaid College Bd.*, 269 So. 3d 586, 595 (Fla. 1st DCA 2019). Plaintiffs respond that immunity is improper because Plaintiffs sue Defendants in their official capacities to enjoin ongoing violations of federal law. ECF No. [30]. Plaintiffs also contend that Defendants' challenge to the merits of the Amended Complaint fails. *Id.* Defendants reply that the entirety of Plaintiffs' claims rests on a premise already decided, and rejected, in *Snyder*. ECF No. [31].

**D. R&R**

In the R&R, Judge Hunt recommends that the Court deny Defendants' Motion. ECF No. [55]. Defendants object to the R&R's conclusion that: (1) Eleventh Amendment immunity and the *Ex Parte Young* exception are threshold matters that do not require an in-depth analysis of Plaintiffs' claims; (2) Plaintiffs' "as applied" challenges survive the statute of limitations; and (3) the Amended Complaint states a claim for impairment of contract and a taking under the Taking

5

Clause. ECF No. [56]. Plaintiffs respond that the R&R is correctly reasoned, and Defendants' objections constitute attempts to relitigate issues already briefed and considered. ECF No. [57].

## II. LEGAL STANDARD

### A. Report and Recommendation

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (alterations omitted) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the report and recommendation to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001).

"It is improper for an objecting party to . . . [submit] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R." *Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) (quoting *Camardo v. Gen. Motors-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).

## B. Eleventh Amendment Immunity

The Eleventh Amendment confirms that "the fundamental principle of sovereign immunity limits the grant of judicial authority in Art[icle] III." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). "Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green*, 474 U.S. at 68. This immunity extends to state agencies and other arms of the state. *Cassady v. Hall*, 892 F.3d 1150, 1153 (11th Cir. 2018). Therefore, "courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit. In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (internal citations omitted).

However, under the *Ex parte Young* doctrine, an exception to this general rule exists where a plaintiff seeks prospective equitable relief to end continuing violations of federal law. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999); *Ex Parte Young*, 209 U.S. 123 (1908). The "'general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought.' . . . Thus, *Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury, or an order for specific performance of a State's contract[.]" *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 256-57 (2011) (emphasis in original) (quoting *Pennhurst*, 465 U.S. at 107).

Case No. 24-cv-60001-BLOOM/Hunt

III. DISCUSSION

    A. Eleventh Amendment Immunity

In the R&R, Judge Hunt recommends that Plaintiffs claims fall within the *Ex parte Young* doctrine and can therefore proceed. ECF No. [55] at 11. The R&R states that at the motion-to-dismiss stage, the question before the Court is whether the relief requested is prospective in nature and capable of preventing injury in the future, and this threshold matter does not require an in-depth analysis of Plaintiffs' claims. *Id.* Judge Hunt finds that, on the face of the Complaint, although this action would have monetary ramifications, it is not camouflaged money damages, and instead classifies Plaintiffs' requested declaration as a simple statement to prevent the Board from applying the TDF exemption. *Id.* at 12.

Defendants argue that the R&R errs in its conclusion that Eleventh Amendment immunity and *Ex parte Young* exceptions do not require an in-depth analysis of Plaintiffs' claims. ECF No. [56] at 3. Further, Defendants object to the R&R's conclusion that Plaintiffs seek prospective relief, and instead argue that Plaintiffs' requested relief includes a monetary award, which is not permitted under the Eleventh Amendment. *Id.* at 6. Plaintiffs respond that they are not seeking retroactive monetary relief and any ancillary financial effect stemming from future compliance with a court order is permissible. ECF No. [57] at 8.

Plaintiffs point to *Quern v. Jordan*, 440 U.S. 332, 337 (1979) to emphasize that *Ex parte Young* permits federal courts to enjoin state officials to conform with the requirements of federal law. In *Quern*, the Court considered whether state officials could be ordered to send an explanatory notice to members of a class of plaintiffs who had been denied welfare benefits, advising the class that a state administrative procedure was available if the members desired to have the state determine their eligibility for past benefits. *Id.* at 335. The Court held that the notice fell within the *Ex parte Young* exception because while there would be incidental administrative expenses

8

associated with preparing and mailing the notice, the notice merely apprised the plaintiff class of the existence of the administrative procedures available. "[W]hether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts, and legislature, not with the federal court." *Id.* at 348; *see also Milliken v. Bradley*, 433 U.S. 267, 289-90 (1977) (concluding order fell within *Ex parte Young* exception where "[t]he decree require[d] state officials, held responsible for unconstitutional conducts, in findings [that were] not challenged, to eliminate a de jure segregated school system").

*Quern* addressed the question central to this case: is the relief Plaintiffs seek "permissible prospective relief or a retroactive award which requires the payment of funds from the state treasury?" 440 U.S. at 346-47 (internal quotation marks omitted). The R&R recommends the Court find that Plaintiffs' claims fall within the former, as Plaintiffs seek declaratory and injunctive action to prevent Defendants from applying the TDF exemption as it is currently doing. ECF No. [55] at 12. However, the Amended Complaint makes clear that Plaintiffs seek a monetary award – *i.e.*, the value of the TDF. *See* ECF No. [15] at 31. In *Quern*, the notice "simply inform[ed] class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there [were] existing state administrative procedures which they may wish to pursue." 440 U.S. at 249. In contrast, Plaintiffs seek to enjoin Defendants from applying the TDF exemption and definition, which would, in essence, require Defendants to pay the value of the TDF to Plaintiffs and the class members. ECF No. [15] at 31.

While it is true that compliance with the terms of prospective injunctive relief will often have an ancillary effect on the state treasury, Plaintiffs' request would have more than a minor effect on state funds. Plaintiffs contend that they seek a refund of *their* monies, but "[t]he prepaid fund . . . consist[s] of state appropriations, moneys acquired from other governmental or private

9

sources for the prepaid program, and moneys remitted in accordance with advance payment contracts." Fla. Stat. § 1009.972(2). In their Amended Complaint, Plaintiffs allege they never paid the TDF, as any Plan Contracts entered into prior to 2007 were exempt. ECF No. [15] at ¶ 44. Therefore, it is evident that Plaintiffs seek more than what was approved in *Quern*. *See Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1245 (11th Cir. 2014) ("[The Court] must ask whether the expenditure of state funds is a necessary result of compliance with an injunction or a declaratory judgment or whether the expenditure is instead the 'goal in itself.'").

Plaintiffs' requested relief is similar to the relief sought in *Seminole Tribe*. There, the plaintiffs sought a declaratory judgment that they were exempt from a fuel tax charged by the Florida Department of Revenue and an injunction that would bar the Department and its director from refusing to issue refunds of the fuel tax already paid. *Id.* at 1242. The Eleventh Circuit identified two flaws with the plaintiffs' suit.

First, the court determined that the Department, and not the director, was the "real, substantial party in interest." *Id.* at 1243. Because "its 'claim is for a "refund," not for the imposition of personal liability on individual defendants for sums illegally exacted,'" the court concluded that the plaintiffs joined the director as a "representative[] of the state, not as [an] individual[] against whom a personal judgment is sought." *Id.* at 1244 (alterations in original) (quoting *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 463-64 (1945)). Here, although Plaintiffs bring claims against the individual members of the Board, the relief they seek is for a refund of the TDF, which is to be paid from the Prepaid Fund. The Prepaid Fund, which consists "of state appropriations, moneys acquired from other governmental or private sources for the prepaid program, and moneys remitted in accordance with advance payment contracts," Fla. Stat. § 1009.972(2), is managed by the Board. *See* Fla. Stat. § 1009.971 (outlining the role of the

Board); *see also Snyder v. Fla. Prepaid Coll. Bd.*, 269 So. 3d 586, 591 (1st DCA 2019) ("The Board's role is to administer Florida Prepaid as the program is created and amended by the Legislature. . . . The Board implements the Legislature's vision for Florida Prepaid through the administrative rulemaking process."). "The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading," *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997), and thus, because Plaintiffs essentially seek a refund from the Board, the Court finds that the Board is the real, substantial party in interest. *See Seminole Tribe*, 750 F.3d at 1243-44; *Ford Motor Co.*, 323 U.S. at 459.

The second flaw identified by the *Seminole Tribe* court was that the relief plaintiff sought was equitable in name only. 750 F.3d at 1244. Any equitable declaration that the plaintiffs were exempt from the tax would "amount to a money judgment against Florida" because the tax was pre-collected, and any exempt consumer collected a refund after-the-fact. *Id.* Similarly, here, as alleged in the Amended Complaint, Plaintiffs purchased their Plans prior to the adoption of the TDF in 2007, and now seek a refund of the TDF years later. *See* ECF No. [15]. Any judgment "[e]njoin[ing] Defendants from applying the TDF exemption and TDF definition . . . and applying Defendants' changes to the Plan Contracts of Plaintiffs and Class Members whose Plan Beneficiaries attend Non-Florida State Schools," would amount to a money judgment against Florida. ECF No. [15] at 31; *see* Fla. Stat. § 1009.972(2). Thus, Plaintiffs' suit is synonymous with a refund to be paid by the State, which is precluded by the Eleventh Amendment.

As Judge Hunt correctly pointed out, Florida has not waived its right to immunity. Without a valid abrogation by Congress, Florida, "an unconsenting State," is immune from suit "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100,

(1984) (internal quotation mark omitted). Accordingly, the Court sustains Defendants' Objections and rejects the R&R on this point.

### B. Statute of Limitations

"Federal courts apply their forum state's statute of limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983." *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (quoting *Uboh v. Reno*, 141 F.3d 1000, 1002 (11th Cir. 1998)). In Florida, the statute of limitations for personal injury actions is four years. *Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1303 (11th Cir. 2022).

The R&R recommends that the statute of limitations does not bar Plaintiffs' claims because the violations to Plaintiffs' constitutional rights occurred on a routine basis, coinciding with tuition payments for their beneficiaries. ECF No. [55] at 12-14. Judge Hunt categorizes Plaintiffs' claims as "as-applied" issues with how the TDF impacts their Plan Contracts, and thus their allegations for violations of the Contract and Taking Clauses, may be timely even if the violation took place outside the statute of limitations. *Id.* at 14.

Defendants object on the basis that Plaintiffs were on notice that the Plan Contracts were subject to change. ECF No. [56] at 10. Defendants also object to the R&R's conclusion that Defendants' enforcement of the TDF constitutes a continuing violation of federal law sufficient to defeat the statute of limitations. *Id.* at 9-10. Defendants contend such a conclusion ignores that the Board's actions have been directed by statute and materially unchanged since before 2007. *Id.* Plaintiffs respond that their claims accrued when Plaintiffs were injured by the allegedly unconstitutional actions, not when the underlying law became effective. ECF No. [57] at 12.

### i. Accrual of Plaintiffs' Claims

At the outset, Judge Hunt is correct that "[a] civil rights claim accrues, and thus the statute of limitations begins to run, when 'the facts which would support a cause of action are apparent or

12

should be apparent to a person with a reasonably prudent regard for his rights.'" *Yohanan v. City of Fort Lauderdale*, CASE NO. 15-60731-CIV-COHN/SELTZER, 2016 WL 5001230, at *3 (S.D. Fla. Jan. 15, 2016) (quoting *Mcnair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)). "This rule requires a court first to identify the alleged injuries, and then to determine when plaintiffs could have sued for them." *Rozar v. Mullis*, 85 F.3d 556, 562 (11th Cir. 1996). "Plaintiffs must know or have reason to know that they were injured, and must be aware or should be aware of who inflicted the injury." *Id.*

The parties present two potential dates for which Plaintiffs should have been aware of their rights: (1) July 1, 2007, when the TDF exemption and definition went into effect; and (2) in 2021, when Defendants first applied the TDF exemption to Plaintiff Darlow. ECF No. [15]. The R&R recommends the Court find Plaintiffs' claims accrued in 2021 because Plaintiffs bring as-applied challenges. However, Plaintiffs identify their injury as the change to their Plan Contracts, *i.e.*, the amendments to Florida Statutes §§ 1009.01, 1009.24, and 1009.98, which created and defined the TDF, and exempted Plaintiffs from receiving the TDF benefit. ECF No. [15]. The Amended Complaint attaches the Plan Contract, which states that "[t]he applicable provisions of part IV, Chapter 1009, Florida Statutes, rules contained in Chapter 19B Florida Administrative Code, and s. 529 of the Internal Revenue Code, as amended from time to time, shall apply to the contract and are incorporated by reference." ECF No. [15-3] at 3.[1] The preamble from the Plan Contract placed Plaintiffs on notice that their Plan Contracts were subject to the statutory and regulatory framework at the time and as amended. *See Snyder v. Fla. Prepaid Coll. Bd.*, 269 So. 3d 586, 591 (1st DCA 2019) (interpreting identical provisions of a 2003-04 Florida Prepaid Master Covenant).

---

[1] *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (stating that a "court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . .").

Thus, when the Florida Legislature adopted the TDF, Plaintiffs knew or should have had reason to know that they were injured. *See Rozar*, 85 F.3d at 562; *cf. Lovett v. Ray*, 327 F.3d 1181, 1182-83 (11th Cir. 2003) (dismissing a complaint that challenged a change to the frequency of parole consideration as time-barred because the litigant "knew, or should have known, all of the facts necessary to pursue a cause of action" when he was notified of the change in law, but waited beyond the statute of limitations before filing his claim).[2]

### ii. Continuing Violation

Judge Hunt recommends the Court find that Plaintiffs allege an ongoing violation because violations occurred on a routine basis, coinciding with tuition payments. "[A] law inflicting a 'continuing and accumulating harm' on a plaintiff 'actively deprive[s]' that plaintiff of his 'asserted constitutional rights every day that it remain[s] in effect.'" *Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1305 (11th Cir. 2022) (quoting *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997)). "[A] plaintiff must identify more than a present harm from a past act to satisfy the continuing violation doctrine." *Doe*, 51 F.4th at 1305. In this determination, the court will "sometimes consider the actions of the defendant." *Id.* "The critical distinction in the continuing violation analysis . . . is whether the plaintiffs complain of 'the present consequence of a one-time violation, which does not extend the limitations period, [or] the continuation of that violation into the present, which does.'" *Knight v. Columbus, Ga.*, 19 F.3d

---

[2] Plaintiffs cite to *Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1303-05 (11th Cir. 2022), to argue that "the harm inflicted by the statute . . . does not occur until the statute is enforced—in other words, until it is applied." 51 F.4th at 1304 (quoting *Hillcrest Prop., LLC v. Pasco County*, 754 F.3d 1279, 1282 (11th Cir. 2014)). However, in *Hillcrest*, the court considered a facial due process challenge against a zoning ordinance, and ultimately held that the land "became encumbered immediately upon the Ordinance's enactment . . . . This injury should have been apparent . . . upon the Ordinance's passage and enactment[.]" 754 F.3d at 1283.

14

579, 580-81 (11th Cir. 1994) (quoting *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993)).

The Eleventh Circuit's decision in *Doe* is instructive. There, the plaintiffs asserted four injuries for the unconstitutional enforcement of different provisions of Florida's registry law. 51 F.4th at 1299-1300. The complaint included a claim that the registry law unconstitutionally required the plaintiffs to take actions that were time-consuming and burdensome, such as the obligation to register, re-register, and report any changes in-person. *Id.* at 1309. The plaintiffs alleged that the ongoing threat of enforcement continued to violate their rights because they continued to forego opportunities out of fear of enforcement. *Id.* The court concluded that plaintiffs alleged a continuing violation, because the law "requires the plaintiffs to make multiple in-person reports each year, even if nothing about their registration information changes." *Id.*

In contrast, here, the Amended Complaint does not allege any ongoing violation of Plaintiffs' rights. The R&R recommends the Court find that each tuition payment to Plaintiffs' beneficiaries that did not include the TDF constitutes a violation. ECF No. [55]. However, in *Doe*, the plaintiffs alleged that the burdensome requirements caused them to forego opportunities because of the ongoing fear of enforcement by the defendant. 51 F.4th at 1309. As pointed out by Defendants, the Board has no such power to choose whether to enforce the TDF exemption. *See* ECF No. [56] at 9. Rather, as alleged in the Amended Complaint, the Board was created pursuant to Florida Statute § 1009.971, and can only enforce and exercise the powers and duties granted to it. ECF No. [15] at ¶ 14. Defendants' actions are mandated by the Florida Legislature and have been materially unchanged since 2007.

Thus, Plaintiffs' claims do not stem from continuous violations, but rather, the continued effects of a past violation, *i.e.*, the adoption of the TDF exemption. The present case is comparable

to a separate provision challenged in *Doe*, which required the plaintiffs to register as sex offenders in the first instance. *Id.* at 1310. The Eleventh Circuit ultimately determined that the claim accrued when the plaintiffs were first designated as sex offenders and required to register. *Id.* The continuing violation doctrine did not save the plaintiffs' claims because the claims were "based on nothing more than the lingering effects of the plaintiffs' initial designation as sex offenders, which occurred over twenty years prior to this lawsuit." *Id.*; *see also Yohanan*, 2016 WL 5001230, at *4 (concluding that claim alleging that the fire department engaged in a pattern of improperly issuing citations was time-barred because the alleged constitutional violation occurred four years prior, and the accrual of fines was merely an effect of the citation issued); *Lovett v. Ray*, 327 F.3d 1181, 1883 (11th Cir. 2003) ("[T]he defendants' act . . . was a one time act with continued consequences, and the limitations period is not extended."); *Motley v. Taylor*, No. 20-11688, 2022 WL 1506971, at *3 (11th Cir. May 12, 2022) (concluding that the plaintiff's procedural due process claim because of the indefinite suspension of her driver's license was a continuing harm, not a continuing violation).

Here, like the initial registration requirement in *Doe*, Plaintiffs' claims regarding the change to their Plan Contracts with Defendants are based on the lingering effects of the adoption of the TDF. *See Doe*, 51 F.4th at 1310; ECF No. [15] at ¶ 54-55. As Defendants correctly point out in their Objections, the adoption of the TDF in 2007, and the subsequent decision to exempt Plaintiffs' contracts from paying it, was a one-time act by the Florida Legislature. *See* ECF No. [56] at 9; ch. 2007-225, Laws of Fla. Plaintiffs' opportunity to challenge the adoption of the TDF has expired, as all of Plaintiffs' alleged injuries stem from that adoption of the TDF definition and exemption in 2007. *See Motley*, 2022 WL 1506971, at *3. Accordingly, the Court sustains Defendants' Objections and rejects the R&R on this point. Because Plaintiffs' claims are precluded

by the Eleventh Amendment, and are nevertheless time-barred, the Court finds that any amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, **ECF No. [24]** is **GRANTED**.

2. Plaintiffs' Amended Complaint, **ECF No. [15]**, is **DISMISSED WITH PREJUDICE**.

3. The Clerk of Court is directed to **CLOSE** this case.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 17, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   Counsel of Record